In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1666

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TONY CURRIE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cr-0093-SEB-KPF — **Sarah Evans Barker**, *Judge.*

ARGUED OCTOBER 25, 2012 — DECIDED JANUARY 7, 2014

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Defendant-Appellant Tony Currie
pleaded guilty to charges that he conspired to distribute 50
grams or more of cocaine base, in violation of 21 U.S.C.
§§ 841(a)(1) and 846, and possessed a firearm following a
felony conviction, in violation of 18 U.S.C. § 922(g)(1). The
district court ordered him to serve a prison term of 121 months,
at the low end of the range advised by the Sentencing Guide-
lines and just above what the court and the parties believed to

be the statutory minimum prison term of ten years. Currie appeals, contending that the district court erroneously denied his motion to suppress evidence without conducting an evidentiary hearing and that its choice of sentence was premised on its mistaken understanding that the new, lower mandatory minimums specified by the Fair Sentencing Act of 2010 did not apply at Currie's sentencing. We find no error in the district court's decision to deny Currie's motion to suppress without an evidentiary hearing. As to his sentence, we order a limited remand for purposes of ascertaining whether the district court would be inclined to sentence Currie differently knowing that Currie is subject to the lower statutory minimum term of five years as provided by the FSA

## I.

Following his own arrest in February 2010 for possession of distribution-sized quantities of cocaine and crack cocaine, an unnamed individual agreed to cooperate with the authorities and lead them to his supplier, Currie. The confidential source ("CS") proceeded to make a series of controlled, recorded purchases of crack cocaine from Currie. These purchases led to the issuance of a search warrant for Currie's residence; the ensuing search in turn produced evidence of a loaded revolver in Currie's home.

The first of the controlled buys took place on March 4, 2010. After a series of monitored phone calls to arrange the purchase of 1.5 ounces of crack cocaine from Currie, the CS met Currie at a residence in Anderson, Indiana. The CS was wired with equipment which produced a video and audio recording of the encounter. The CS followed Currie into the kitchen, where

Currie presented him with a plastic bag containing roughly 91 grams of cocaine base. At Currie's request, the CS proceeded to re-cook the cocaine base; Currie then re-weighed the substance on a digital scale (it now weighed 96 grams) and re-packaged it for the CS. The CS paid Currie the agreed-upon price and left the residence.

The CS subsequently engaged in two more controlled purchases of crack cocaine from Currie on March 12 and March 18, 2010. These transactions were not recorded on video, but audio recordings were made in both instances. Moreover, as with the March 4 purchase, both transactions were preceded by recorded telephone calls in which the CS arranged to make the purchases from Currie.

On May 10, 2010, the government sought and obtained a search warrant for Currie's residence in Indianapolis. The affidavit submitted in support of the warrant request noted that the government's CS had made three controlled purchases of cocaine from Currie in March. The affidavit reported the CS's prior criminal history, noted that the CS had been cooperating with the government since February 2010, and indicated that much of the information supplied by the CS had been corroborated. The CS's three transactions with Currie were then described in detail, along with the fact that the purchases were both recorded by the CS and preceded by consensually monitored telephone calls between the CS and Currie. The agent who prepared the affidavit indicated that he had reviewed the video recording of the March 4 transaction. He described the actions depicted on that video and averred,

based on his training and experience, that the substance that Currie handed to the CS was, in fact, cocaine base.

The search warrant was executed on May 11, 2010. Upon entering the residence, agents found Currie in his bedroom, attempting to hide a loaded revolver in the closet. Various indicia of drug trafficking were also found in the residence.

The discovery of the gun led to the inclusion of a felon-in-possession charge along with the five narcotics-related charges in the indictment that the grand jury returned against Currie on June 8, 2010. Currie subsequently moved to suppress the results of the search on multiple grounds. As relevant here, he contended that the affidavit submitted in support of the warrant application was insufficient, absent the CS's own testimony, to establish the CS's reliability and thus to establish probable cause for the search. Currie also contended that the CS had provided misleading information to law enforcement officers which had made its way into the affidavit. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), Currie asked the district court to conduct an evidentiary hearing on this second contention.

The district court denied the motion to suppress without a hearing. The court described Currie's attack on the sufficiency of the warrant affidavit vis-à-vis the CS's credibility as "a non-starter," given that the CS's transactions with Currie had been both monitored and recorded, and the agent who prepared the affidavit described the steps taken in that regard as well as what he saw and heard in reviewing the recordings. R. 73 at 7. Consequently, "[t]here was no reliance placed on the CS's independent, unilateral, unsupervised actions or statements,"

and no need for additional information (or live testimony from the CS) to document the CS's reliability and to establish probable cause for the search warrant. R. 73 at 7. "We find the Affidavit to be both detailed and thorough, with no critical omissions or unsubstantiated, unreliable averments." R. 73 at 8. The court saw no need for an evidentiary hearing on Currie's additional claim that the affidavit contained misleading information. "There is no evidence that [the agent] 'knowingly, intentionally, or with a reckless disregard for the truth, made false statements in the warrant affidavit and that the false statements were necessary for the judicial officer to conclude that probable cause existed.'" R. 73 at 9 (quoting *United States v. Norris*, 640 F.3d 295, 300–01 (7th Cir. 2011)).

Currie subsequently decided to change his plea while reserving his right to appeal the adverse ruling on his motion to suppress. As we indicated at the outset, Currie pleaded guilty to the narcotics conspiracy and felon-in-possession charges. Although Currie was sentenced after the enactment of the Fair Sentencing Act of 2010, 124 Stat. 2372 (the "FSA"), the parties, the probation officer, and the district court, in accord with this court's decision in *United States v. Fisher*, 635 F.3d 336 (7th Cir.), *reh'g en banc denied*, 646 F.3d 429 (7th Cir. 2011), *vacated & remanded sub nom. Dorsey v. United States*, 132 S. Ct. 2321 (2012), assumed that the more favorable statutory penalties specified by the FSA did not apply at Currie's sentencing because his offenses were complete before the FSA took effect; therefore they assumed that Currie was subject to a minimum statutory prison term of ten years. The court ordered Currie to serve a term of 121 months, a sentence at the low end of the range advised by the Sentencing Guidelines and

one month above what the court believed was the statutory minimum.

## II.

Currie's contention that the affidavit is on its face inadequate is, as the district court observed, going nowhere. The contents of a warrant affidavit will establish probable cause to search if, based on the totality of the circumstances, the affidavit presents evidence supporting a reasonable belief that the search of the subject premises will produce evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). Currie's attack on the sufficiency of the affidavit focuses on the credibility of the CS: Currie maintains that the affidavit does not supply enough information to establish the CS's reliability as an informant. *See, e.g., United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (outlining factors which inform assessment of informant's credibility). But in this case, the key information set forth in the affidavit had to do with the three controlled purchases of cocaine from Currie. Those transactions were both monitored and recorded by the authorities, so the story as to what occurred did not rest on the CS's account alone. Indeed, the agent who prepared the affidavit had reviewed the audiovisual recording of the first of the sales and described what the recording showed: that Currie handed a bag of what appeared to be crack cocaine to the CS, had the CS re-cook it, and then repackaged the cocaine for the CS. That recording, and the audio recordings of the other two sales, supplied all the corroboration of the CS that was necessary. The affidavit was therefore sufficient on its face, and there was no need for the magistrate judge who issued the search

warrant to hear testimony from the CS before determining that probable cause existed to search Currie's residence.

Nor was it necessary for the court to convene a *Franks* hearing based on Currie's assertion that the warrant affidavit repeated false or misleading information supplied by the CS. A court must convene a *Franks* hearing when the defendant makes a substantial preliminary showing that authorities deliberately or recklessly made material misrepresentations in the affidavit used to procure the search warrant. 438 U.S. at 155–56, 98 S. Ct. 2676; *see also, e.g., United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006) (defendant is entitled to *Franks* hearing when he shows that (1) warrant affidavit contained materially inaccurate information, (2) authorities knew of or recklessly disregarded the inaccuracy, and (3) purportedly inaccurate statement was necessary to the finding of probable cause). In this case, Currie never identified any particular aspect of the warrant affidavit that was false or misleading (let alone deliberately or recklessly so); he instead sought a *Franks* hearing based solely on a generalized allegation that the CS provided misleading information to investigators which made its way into the affidavit. Indeed, even on appeal, Currie has failed to identify any averment in the warrant affidavit which was false or misleading. Under these circumstances, the court committed no error in denying the motion to suppress without an evidentiary hearing. *See, e.g., United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) ("Conclusory, self-serving statements are not enough to obtain a *Franks* hearing.") (citing *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684).

We turn to the matter of Currie's sentence. Currie pleaded guilty to conspiring to distribute 50 or more grams of crack cocaine. At the time of his offense, committed in the spring of 2010, that quantity of crack cocaine triggered a statutory minimum prison term of ten years. By the time Currie was sentenced in March 2012, the Fair Sentencing Act of 2010 had lowered the statutory minimum term applicable to someone in Currie's position to five years. However, given our holding in *Fisher*, 635 F.3d 339–40, that the new statutory minimums did not apply to defendants whose offenses predated the Act, the parties and the court assumed that Currie was still subject to the ten-year minimum. Several months after Currie was sentenced to a term of 121 months, the Supreme Court held in *Dorsey* that the FSA applies to any defendant sentenced after its effective date, even if the offense was committed before the Act's enactment. *Dorsey*, 132 S. Ct. 2321.

We now know that Currie was subject to a statutory minimum term of five years and not ten years, as the district court presumed. Although Currie did not preserve an argument below that the lower minimum term specified by the FSA applied to him, he contends that the court committed plain error in deeming him subject to the pre-FSA ten-year minimum and that he is, consequently, entitled to resentencing. *See* Fed. R. Crim. P. 52(b). Given the Supreme Court's decision in *Dorsey*, there is no dispute that the district court committed an error which is, in retrospect, plain in the sense of being obvious. *See Henderson v. United States*, 133 S. Ct. 1121, 1127–28 (2013). The disputed issue is whether Currie was prejudiced by the error, in the sense that he might have received a lesser sentence had the court realized he was not subject to the ten-

year minimum. *See United States v. Olano*, 507 U.S. 725, 734–35, 113 S. Ct. 1770, 1777–78 (1993); *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005). Currie contends that because the court, in sentencing him to a 121-month term, remarked that it was bound by the ten-year minimum, there is every reason to believe that his sentence was the product of the court's mistaken belief as to the statutory minimum. The government, on the other hand, emphasizes the court's additional remark that the 121-month term was a fair sentence, an observation that in its view makes clear the court would have imposed the same sentence even had it realized that it was not bound by the statute to impose a minimum term of ten years.

We take our cue in resolving this dispute from *Paladino*, 401 F.3d at 483–84. In the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), which rendered the Sentencing Guidelines advisory, *Paladino* established our framework for deciding whether a district court's mistake in treating the Guidelines as binding constituted plain error. *Paladino* recognized that the answer to that inquiry turns on prejudice. 401 F.3d at 481–84; *see also United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005) ("In order to show plain error the defendant must establish, among other things, that the error 'affected substantial rights'—which is to say that it made the defendant worse off."). As a reviewing court, we could say that the error did not prejudice the defendant if it was clear that the sentencing judge would have imposed the same sentence absent the error. *Paladino*, 401 F.3d at 483. The difficulty, as we recognized, was in determining what the sentencing judge would have done had he realized he was not bound by the Guidelines range.

> [S]entencing is not either-or; it is the choice of a point within a range established by Congress, and normally the range is a broad one. There are exceptions, notably where the choice is between death and life in prison; then, as in *Jones v. United States*, 527 U.S. 373, 402–05, 119 S. Ct. 2090 (1999), it may be feasible for the appellate court to determine that despite the error the choice would have been the same. Cf. *United States v. Cotton*, 535 U.S. 625, 633–34, 122 S. Ct. 1781 (2002). That is not true here; here, unless any of the judges in the cases before us had said in sentencing a defendant pre-*Booker* that he would have given the same sentence even if the guidelines were merely advisory (which none of the judges did say), it is impossible for a reviewing court to determine—*without consulting the sentencing judge* (a pregnant qualification, as we are about to see)—whether the judge would have done that.

401 F.3d at 482 (emphasis in original). In some number of cases, we recognized, it will be possible to predict what the sentencing judge would have done without having to ask, as when the judge departed below the Guideline range to impose a sentence at the statutory minimum, or conversely, when she imposed a sentence at the statutory maximum and remarked that he would have sentenced the defendant to a longer term if she could. *Id.* at 482–83; *see also Lee*, 399 F.3d at 866–67. Short of such clues, "[t]he only practical way (and it happens also to be the shortest, the easiest, the quickest, and the surest way) to determine whether the kind of plain error argued in these cases has actually occurred is to ask the district judge." *Paladino,* 401

F.3d at 483. If the judge indicates that she would not have sentenced the defendant differently had she realized the Guidelines were not binding, then we would conclude that the defendant was not prejudiced by the error and we would proceed to affirm the sentence so long as it was reasonable. *Id.* at 484. If, on the other hand, the district court indicated that it would be inclined to impose a different sentence, that prejudice would be established, and we would vacate the judgment and remand for resentencing. *Id.*

Here the district court was similarly mistaken as to the limits of its sentencing authority. Rather than being bound by a ten-year statutory minimum, the court was instead bound by a significantly lower five-year minimum. In assessing whether Currie was prejudiced by the error, such that he is entitled to relief under the plain error doctrine, we apply the *Paladino* model. *See United States v. Maxwell*, 724 F.3d 724, 729 (7th Cir. 2013).

Here, competing inferences can be drawn from the record as to what the sentencing judge might have done had she known that she was not bound by the ten-year minimum. This is the relevant passage from the judge's remarks at sentencing:

> Everybody agrees, Mr. Currie, that 121 months, even though it's the low point of the guidelines, and it pretty much nails the mandatory minimum on the head, is a long time. So we can't pull any punches on that. We know that's the fact, but it seems to be a reasonable sentence under the circumstances, not only because of what the law requires, but given the nature and circumstances of this offense and your

> prior criminal history, and your problems with
> addiction, your willingness to participate in this
> cocaine conspiracy, your possession of firearms,
> even when you had a prior gun conviction, you had
> a firearm again, and so on.

R. 136 at 26–27. The government construes Judge Barker's remark that the 121-month sentence "seems to be a reasonable sentence under the circumstances" as a signal that she would have imposed the same sentence even had she realized she was not bound by the ten-year minimum. Currie, on the other hand, contends that the judge's view as to the reasonableness of a 121-month sentence was necessarily premised on her mistaken belief that ten years was the minimum sentence she could impose. Having reviewed the sentencing transcript ourselves, we cannot say with complete confidence that the court would have imposed the same sentence regardless of the statutory minimum.

As in *Paladino*, a limited remand is the most prudent way to resolve all doubt on this question. As the government concedes, at no time did the district judge actually say that she would have imposed the same sentence even were there no ten-year minimum; nor does her choice of sentence otherwise make that clear in one of the ways we discussed in *Paladino* or *Lee*. The judge did say that the sentence was "a reasonable sentence under the circumstances, not *only* because of what the law requires," R. 136 at 26 (emphasis ours), but for the other reasons she articulated; and perhaps by that she meant to say it was the sentence she would have chosen regardless of any minimum. But the statutory minimum was necessarily one of

the circumstances that the judge had to consider in ascertaining a reasonable sentence. *See, e.g.*, *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013). Statutory minima and maxima have an obvious anchoring effect on the judge's determination of a reasonable sentence in the sense that they demarcate the range within which the judge may impose a sentence. *See United States v. Aguilar-Huerta*, 576 F.3d 365, 366 (7th Cir. 2009) (describing pre-Guidelines sentencing practice). *Peugh v. United States*, 133 S. Ct. 2072, 2082–84 (2013), makes this same point with respect to the Sentencing Guidelines. The Court in *Peugh* held that the Constitution's *ex post facto* clause is violated when a court sentences a defendant using a post-offense version of the Guidelines that produces a higher sentencing range than the version in effect at the time of the defendant's crime. In rejecting the view of this and other courts that the advisory nature of the Guidelines obviates any *ex post facto* problem (because a judge is free in the exercise of her discretion to impose a sentence outside of the Guidelines range, *see United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006)), the Supreme Court emphasized that the Guidelines still supply the framework for the sentencing decision: the judge must begin her analysis with the correctly-calculated Guidelines range, remain cognizant of the Guidelines throughout the process, and have a justification for both a deviation from the Guidelines range and its extent. 133 S. Ct. at 2083. Thus, even a non-Guidelines sentence is, in the end, a product of the Guidelines. *Id.* This is all the more true when it comes to statutory limits. And absent an express statement like "This is a reasonable sentence, and I would have imposed it even without the ten-year minimum," *see United States v. Foster*, 701 F.3d 1142,

1157–58 (7th Cir. 2012); *United States v. Campbell*, 503 F. App'x 472, 473–74 (7th Cir. 2013) (nonprecedential decision), it is difficult to say whether the court would have arrived at the same sentence had it realized it was bound by a significantly lower statutory minimum.

The district judge's remarks at sentencing give us no indication that she ever considered the possibility that a lower statutory minimum might apply to Currie (recall that Currie did not challenge the applicability of the ten-year minimum term below), nor do they include an unambiguous statement to the effect that the judge would have considered the 121-month sentence it imposed reasonable even if the five-year minimum specified by the Fair Sentencing Act applied, as we now know (in hindsight) that it does.

We therefore order a limited remand so that the district judge may consider, and state on the record, whether she would have imposed the same sentence on Currie knowing that he was subject to a five-year rather than a ten-year statutory minimum term of imprisonment. We shall retain jurisdiction over this appeal pending the district court's answer to our inquiry.

AFFIRMED IN PART and REMANDED.