# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30222

United States Court of Appeals
Fifth Circuit

**FILED**

September 2, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

TYVON D. TAYLOR,

    Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CR-153-1

Before WIENER, ENGELHARDT, and OLDHAM, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Tyvon Taylor appeals the 120-month sentence imposed by the district court following his plea of guilty to one count of being a felon in possession of a firearm. Taylor contends that: (1) The district court erred when it attempted to reduce the length of his sentence either by ordering that the sentence commence on a particular date or by ordering that he be given credit for time served, and (2) The sentence imposed by the district court is impermissibly ambiguous because the pronouncement that it "run concurrently with any sentence imposed by state authorities" does not specify

No. 19-30222

with which state sentence or sentences, corresponding to four pending state court charges, the federal sentence will run concurrently.

We conclude that the district court's attempted reduction of Taylor's sentence was ineffectual and order a limited remand for the district court to consider, and state on the record, whether that court would have imposed the same sentence regardless. We also conclude that the sentence imposed is ambiguous because it fails to identify the specific state sentence or sentences with which the federal sentence will run concurrently. We therefore order a limited remand for the district court to consider, and state on the record, whether that court would have imposed the same sentence knowing of the ambiguity.

**I.**

In June 2018, a federal grand jury returned a one-count indictment charging Taylor with being a felon in possession of two firearms, viz. a .40 caliber Springfield Armory pistol and a Smith and Wesson 9mm pistol, beginning on or about August 12, 2017, and continuing until on or about August 15, 2017. In October 2018, Taylor pleaded guilty, and the district court ordered the preparation of a presentence report (PSR).

The "offense conduct" section of the PSR includes information about Taylor's involvement in shootings on August 12 and 13, 2017. That section of the PSR also includes information regarding an August 15, 2017 traffic stop of a vehicle in which Taylor was a passenger during which officers found Taylor in possession of firearms.

The PSR reflects that, during the August 12, 2017 incident, Shreveport (Louisiana) Police Department officers responded to a shooting and located a victim suffering from multiple gunshot wounds. That victim identified Taylor as his assailant. Investigators located .40 caliber and 9mm caliber shell casings at the scene.

2

No. 19-30222

The August 13, 2017 incident involved officers responding to a call of shots fired and observing an empty vehicle crashed into a light pole. The PSR noted that investigators located spent shell casings and live rounds in and around the vehicle. The owner stated that Taylor had borrowed the vehicle. Taylor was identified as the person driving and shooting from the vehicle prior to the crash and was observed fleeing from the vehicle prior to the arrival of the police.

As for the August 15, 2017 traffic stop, the PSR recounted that, after procuring an arrest warrant for Taylor, police had arrested him during a traffic stop of a vehicle in which he was a passenger. The driver of the vehicle stated that once police attempted to initiate the stop, Taylor had pointed two handguns at him and accused him of setting up Taylor. As noted, police located a Smith and Wesson 9mm handgun and a .40 caliber Springfield Armory handgun in the vehicle. The analysis conducted on the two firearms in Taylor's possession at the time of his arrest determined that they matched shell casings found at the scenes of the August 12 and August 13 shootings.

The PSR also listed four pending state charges:

(1) July 31, 2017 (case number 351,576) related to possession of a firearm or carrying a concealed weapon by a convicted felon and illegal use of weapons during violence;
(2) August 12, 2017 (case number 351,577) related to attempted second degree murder and possession of a firearm or carrying a concealed weapon by a convicted felon;
(3) August 13, 2017 (case number 351,999) related to illegal use of weapons or dangerous instrumentalities and possession of a firearm or carrying a concealed weapon by a convicted felon; and
(4) August 15, 2017 (case number 351,578) related to possession of a firearm or carrying a concealed weapon by a convicted felon.

Taylor committed the offense of being a felon in possession of a firearm in connection with the commission of attempted second degree murder, so the PSR applied United States Sentencing Guideline ("U.S.S.G.") § 2A2.1(a)(2),

3

No. 19-30222

which relates to attempted murder, to compute Taylor's base offense level.[1] An increase for a victim sustaining serious bodily injury and a reduction for timely acceptance of responsibility produced a total offense level of 26. That offense level, combined with his criminal history score of 12 and criminal history category of V, produced a guidelines sentencing range of 110 to 137 months, capped at 120 months by a statutory maximum.[2]

Taylor did not object to the PSR, but he did file a sentencing memorandum in which he requested that his sentence be at the low end of the guidelines range and run concurrently to any sentences imposed in the four pending state court charges, pursuant to U.S.S.G. § 5G1.3(c):

> If . . . a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.[3]

At the sentencing hearing, the district court adopted the factual findings contained in the PSR. The court characterized the relevant conduct as "attempted murder arising out of possession of a firearm by a convicted felon" and involving "not mere possession, but the firing of two different pistols, one a 9-millimeter, one a .40 caliber, both of which were in the possession of this defendant." The sentencing court observed that "[i]t does appear that the multiple charges that [defense counsel] referred to appear to be somewhat temporally related, I think within . . . 13 to 16 days." The district court also stated,

> Now, I want to make this really clear on the record. Your sentence in this court is going to be run at the same time with any

---

[1] The parties do not dispute the application of this guideline.

[2] *See* 18 U.S.C. § 924(a)(2).

[3] U.S.S.G. § 5G1.3(c).

sentence that the state imposes. The state sentence could be longer or it could be shorter than the sentence I imposed on you today. Nonetheless, for the federal part and state part, if the state proceeds, you will serve your state sentence in state custody first, before you are transferred to a federal prison.

It is possible that if the state sentences you—let me just pick a number—to 15 years, how much of that you will actually serve in state custody, I don't know. But in federal custody that will be running at the same time as the state sentence . . .

. . . and it's possible that you could—if they give you a 20-year sentence, that you could serve all of your time in state custody, receive credit for federal custody concurrently, and never see the inside of a federal prison. That's possible.

At the sentencing hearing, defense counsel asked "the Court to specifically give Mr. Taylor the credit for time served from the date he was taken into federal custody, which is the July 9 of 2018 date." Defense counsel noted that Taylor had already served nine or ten months on the state court charges prior to that date, and he speculated that the Bureau of Prisons would not credit Taylor for that time in state custody. Defense counsel suggested that the district court "go back and make the sentence retroactive to the July 9 of 2018 date."

The district court observed that the guidelines sentence had been substantially increased because of the relevant conduct but determined that the application of the attempted murder guideline was appropriate. The court sentenced Taylor to the within-guidelines statutory maximum of 120-months imprisonment and a three-year period of supervised release.

In pronouncing the sentence, the district court stated, "[t]he judgment in this particular matter will show that this sentence is to run concurrently with any sentence imposed by state authorities on the conduct described, and this Court will begin the federal sentence as of the time he is taken into federal custody, which is July 9, 2018." The written judgment provides, "[t]his sentence shall run concurrently with any sentence imposed by state authorities

on the conduct described. Defendant shall receive credit for time served from July 9, 2018." At the sentencing hearing, defense counsel objected to the sentence to the extent that the statutory maximum sentence deprived Taylor of the benefit of a guilty plea.

Taylor here takes issue with the sentence imposed by the district court for two reasons. He first contends that the district court erred when it attempted to reduce the length of his sentence either by giving him credit for time served in federal custody prior to the sentencing (as did the oral pronouncement) or by commencing his sentence retroactively (as did the written judgment). Taylor also claims that the sentence is impermissibly ambiguous because it does not specify with which state sentence or sentences (corresponding to the four pending state court charges) the federal sentence will run concurrently. Taylor requests that we vacate his sentence and remand to the district court to permit that court to: (1) consider reducing his federal sentence by an amount equal to the period of time he served in federal custody prior to being sentenced and (2) clarify with which state sentence or sentences his federal sentence will run concurrently.

## II.

### A.

Taylor invited the district court's error with respect to the backdated commencement of his sentence and the credit for time served in federal custody prior to being sentenced. At the sentencing hearing, defense counsel asked "the Court to specifically give Mr. Taylor the credit for time served from the date he was taken into federal custody, . . . July 9 of 2018." Defense counsel also suggested that the district court "go back and make the sentence retroactive to the July 9 of 2018 date."

No. 19-30222

"The Fifth Circuit will not reverse on the basis of invited error, absent manifest injustice."[4] Manifest injustice occurs when the district court's "error was so patent as to have seriously jeopardized the rights of the appellant."[5]

Taylor insists that a manifest injustice occurred because (1) the district court intended to reduce his sentence by the number of days he served in federal custody prior to being sentenced and (2) the ineffectual sentence fails to do so. In the oral pronouncement of the sentence, the district court stated, "this Court will begin the federal sentence as of the time [Taylor] is taken into federal custody, which is July 9, 2018." The written judgment provides, "Defendant shall receive credit for time served from July 9, 2018."

The district court is not permitted to compute the credit for time served[6] or to order the backdated commencement of a sentence.[7] The BOP alone is authorized to take these actions.[8] If the district court intended to award Taylor credit for the time he served in federal custody prior to being sentenced, that court should have reduced his sentence accordingly and noted the reason for the reduction in the judgment.[9]

---

[4] *United States v. Salazar*, 751 F.3d 326, 332 (5th Cir. 2014) (internal alterations omitted)

[5] *United States v. Lemaire*, 712 F.2d 944, 949 (5th Cir. 1983).

[6] *See United States v. Wilson*, 503 U.S. 329, 331-32 (1992); 18 U.S.C. § 3585(b). The parties agree that the district court was not authorized to compute any credit for time served.

[7] *See United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.); *Wilson v. Henderson*, 468 F.2d 582, 584 (5th Cir. 1972). The parties agree that the district court was not authorized to order that the sentence commence on a particular date.

[8] *Wilson*, 503 U.S. at 333-37.

[9] *See United States v. Coffman*, 178 F. App'x 389, 391-92 (5th Cir. 2006) (unpublished) (noting, after district court improperly ordered that the defendant be given credit for time served in state custody on a related sentence prior to his sentencing in federal court, that "[t]o award [the defendant] credit for this time, the district court should reduce [his] sentence accordingly and note the reason for the reduction in the judgment").

7

No. 19-30222

Although the limited remand is a seldom-used practice in this circuit, we deem that procedure warranted in a case such as this. It is not apparent here that the defendant was harmed by an error because it is not clear whether the district court would have acted differently had it known of the error.[10] We order a limited remand so that the district court may consider, and state on the record, whether it would have imposed the same sentence knowing that it could not order either that (1) the commencement of Taylor's sentence be backdated or (2) Taylor receive credit for the time he served in federal custody prior to sentencing.[11] If on remand the district court clarifies that it would not have imposed the same sentence, then the error Taylor invited is manifest, and we would vacate Taylor's sentence and remand for resentencing.[12] If, on the other hand, the district court indicates that it would have imposed the same sentence even knowing the limitations regarding the commencement of the sentence and credit for time served, then we would conclude that no manifest injustice occurred and would affirm the sentence.[13]

---

[10] *See United States v. Rodriguez-Pena*, 957 F.3d 514, 516-23 (5th Cir. 2020) (Oldham, J., concurring) (discussing the benefits of a limited remand); *see also United States v. Gomez*, 905 F.3d 347, 355 (5th Cir. 2018) (ordering a limited remand for the district court to clarify whether it wished to reconsider the sentence imposed because the Fifth Circuit could not determine from the record whether the district court would have imposed a lesser sentence, had it known that was permissible); *United States v. Malone*, 828 F.3d 331, 340 (5th Cir. 2016) (acknowledging that the panel granted the Government's motion for a limited remand for the district court to clarify its understanding of its discretion and, if appropriate, its willingness to deviate from the advisory range).

[11] *See Molina-Martinez v. United States,* 136 S. Ct. 1338, 1348 (2016) (noting that courts have "developed mechanisms short of a full remand to determine whether a district court in fact would have imposed a different sentence absent the error"); *United States v. Currie*, 739 F.3d 960, 965, 967 (7th Cir. 2014) (ordering a limited remand so that the district court could consider, and state on the record, whether it would have imposed the same sentence knowing that the defendant was subject to a lower minimum term of imprisonment).

[12] *See Currie*, 739 F.3d at 965.

[13] *See id.*

No. 19-30222

## B.    Concurrent Nature of Sentence

We review Taylor's claim regarding the concurrent nature of his sentence for plain error.[14] Plain error requires a defendant to show: "(1) that the district court committed an error (2) that is plain and (3) affects his substantial rights and (4) that failure to correct the error would seriously affect the fairness, integrity or public reputation of judicial proceedings."[15] We conclude that the district court committed an obvious error when it imposed an ambiguous sentence that fails to specify with which of the state sentence or sentences the federal sentence will run concurrently. But it is not clear whether the ambiguous nature of Taylor's sentence affected his substantial rights, so we order a limited remand for the district court to clarify, and state on the record, whether it would have imposed the same sentence had it known of the ambiguity.

The sentence imposed by the district court is ambiguous because it does not identify the specific state sentence or sentences, corresponding to the four pending state court charges, with which Taylor's federal sentence will run concurrently. Neither the court's written judgment nor its oral pronouncement of the sentence provides clarity. In both, the district court ordered that Taylor's sentence "run concurrently with any sentence imposed by state authorities on

---

[14] Although Taylor requested that his sentence run concurrently to the yet-to-be-imposed sentences on four pending state court charges and failed to object to the ambiguity in the sentence that he now raises, those actions do not constitute waiver because they do not evince an intentional relinquishment of his right to appeal his sentence. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (Waiver is the "intentional relinquishment or abandonment of a known right."); *see also United States v. Sanchez-Hernandez*, 931 F.3d 408, 411 n.2 (5th Cir. 2019) (concluding that a defendant's response of "yes" to a question regarding whether the facts in the PSR were correct did not clearly reveal which right the defendant intended to waive and, because of the ambiguity, there was no waiver but rather a forfeiture); *United States v. Zubia–Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008) ("[T]here must be some evidence that the waiver is knowing and voluntary, beyond counsel's rote statement that she is not objecting . . . ." (internal quotation marks omitted)).

[15] *Sanchez-Hernandez*, 931 F.3d at 410 (internal quotation marks omitted).

the conduct described." Despite the district court's expressed desire to make it "really clear on the record" that the sentence will "run at the same time with any sentence that the state imposes," the sentence is susceptible of more than one reasonable interpretation because of the phrase "conduct described."

The district court described Taylor's relevant conduct as "attempted murder arising out of possession of a firearm by a convicted felon." This could, on its face, relate only to the August 12, 2017 state case, which charges Taylor with attempted second-degree murder. As such, the federal sentence could be interpreted to run concurrently with the state sentence only on that charge. However, the "offense conduct" section of the PSR reveals that the August 13, 2017 incident—when officers responded to a shots-fired call and a witness stated that Taylor was driving and shooting from a vehicle—might also relate to attempted murder, even though Taylor was not charged with that offense for his conduct on August 13. The federal sentence could therefore be interpreted to run concurrently with the sentence imposed on both the August 12 and the August 13 pending state court charges. The district court's classification of the relevant conduct as involving "not mere possession, but the firing of two different pistols, one a 9-millimeter, one a .40 caliber pistol, both of which were in the possession of this defendant" could be interpreted to encompass all four of the pending state court charges, each of which includes possession of a firearm by a convicted felon.

Determining the state court sentences with which the federal sentence will run concurrently is further complicated by the pending state court charge related to conduct that occurred on July 31, 2017. That conduct is not covered by the federal indictment, which charges Taylor with being a felon in possession of a firearm beginning on or about August 12, 2017, and continuing until on or about August 15, 2017. Neither is the late July charge included in the "offense conduct" section of the PSR. The July 31, 2017 conduct first

appears in the "pending charges" section of the PSR and is referenced by Taylor in his sentencing memorandum. The district court nevertheless observed that the conduct was "somewhat temporally related, I think within . . . 13 to 16 days." The July 31, 2017 conduct occurred within 16 days of the August 15, 2017 conduct and could, therefore, be considered part of the "conduct described."

Reasonable minds could differ on the interpretation of the sentence imposed by the district court, so it is ambiguous. We have held that "[a] sentence may be illegal if it is ambiguous with respect to the time and manner in which it is to be served . . . ."[16] "Criminal sentences must 'reveal with fair certainty the intent of the court to exclude any serious misapprehensions by those who must execute them.'"[17] On limited remand, the district court should also consider, then state on the record, whether or not it would (1) have imposed the same sentence in light of the ambiguities noted or (2) it wishes to clarify the specific state sentence or sentences with which Taylor's federal sentence will run concurrently.

## III.

We order a LIMITED REMAND to the district court to consider, and state on the record, whether it would have imposed the same sentence knowing that: (1) it could not effectively order the backdated commencement of Taylor's sentence, (2) it could not effectively order that Taylor be given credit for the time he served in federal custody prior to being sentenced, and (3) the sentence is susceptible of more than one reasonable interpretation. We retain jurisdiction over this appeal pending the district court's answer to our inquiry.

---

[16] *United States v. Setser*, 607 F.3d 128, 132 (5th Cir. 2010), *aff'd*, 566 U.S. 231 (2012) (internal quotation marks and citations omitted).

[17] *Id.* (quoting *United States v. Garza*, 448 F.3d 294, 302 (5th Cir. 2006)); *see also United States v. Daugherty*, 269 U.S. 360, 363 (1926); *United States v. Juarez*, 812 F.3d 432, 437 (5th Cir. 2016).