# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 23, 2022

Lyle W. Cayce
Clerk

No. 21-50294

United States of America,

*Plaintiff—Appellee*,

*versus*

Deshawn Dawayne Griffin,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CR-332-1

Before Higginbotham, Higginson, and Oldham, *Circuit Judges*.
Per Curiam:*

We turn again to a written judgment with discretionary conditions of supervised release not orally pronounced at sentencing. As the district court adopted neither the presentence report nor a court standing order, the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50294

discretionary conditions in the written judgment conflict with the oral pronouncement. So, we remand to the district court to amend the written judgment.[1]

## I.

Deshawn Dawayne Griffin pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Presentencing Report ("PSR") determined that Griffin's base offense level was 22 under U.S.S.G. § 2K2.1(a)(3) because Griffin's offense involved a qualifying firearm and Griffin had a prior felony conviction for aggravated robbery, a crime of violence eligible for the enhancement. Due to Griffin's acceptance of responsibility, the offense level was lowered to 19. The advisory guidelines range of imprisonment was for 37 to 46 months. At his sentencing hearing, Griffin objected to the PSR only on the ground that his Texas aggravated robbery conviction did not qualify as a crime of violence. The district court overruled that objection and sentenced him to a within-guidelines term of 37 months of imprisonment and three years of supervised release. Griffin timely appeals.

## II.

When a defendant objects to a condition of supervised release for the first time on appeal, "the standard of review depends on whether he had an opportunity to object before the district court."[2] If the defendant had the opportunity to object, but failed to do so, we review for plain error.[3] If there

---

[1] Griffin does not challenge the third special condition, requiring mental health treatment, which was requested by defense counsel.

[2] *United States v. Grogan*, 977 F.3d 348, 352 (5th Cir. 2020).

[3] *Id.*

No. 21-50294

was no opportunity for the defendant to object, we review for abuse of discretion.[4] We first address whether Griffin had the opportunity to object.

"[A] defendant has a constitutional right to be present at sentencing."[5] In *United States v. Diggles*, this Court held that conditions of supervised release are part of a defendant's sentence and so must be pronounced unless their imposition is mandatory, as required by 18 U.S.C. § 3583(d).[6] A district court may satisfy this pronouncement requirement by adopting a list of recommended supervised release conditions from a standing order, the PSR, or some other document,[7] but "the mere existence of such a document is not enough for pronouncement."[8] The district court must ensure that the defendant has an opportunity to read and review that list with counsel and must orally adopt that list when the defendant is in court and can object.[9] "The pronouncement requirement is not a meaningless formality" because it provides the defendant with notice of the sentence and a chance to object.[10]

A district court does not adequately notify a defendant of the conditions to afford an opportunity to object where it fails to ask the defendant if he reviewed the PSR and does not refer to a standing order or

---

[4] *Id.*

[5] *United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003); Fed. R. Crim. P. 43(a)(3).

[6] 957 F.3d 551, 559 (5th Cir.) (en banc), *cert. denied*, 141 S. Ct. 825 (2020).

[7] *Id.* at 560–63.

[8] *Id.* at 561 n.5.

[9] *Id.* at 560–63.

[10] *Id.* at 560.

to mandatory and standard conditions.[11] But where the district court confirms that the defendant has reviewed the PSR and announces that it is adopting the PSR, which recommends the standard conditions, the requirement is fulfilled.[12] Here, the district court confirmed that Griffin had the opportunity to review the PSR with defense counsel. The PSR listed all five special conditions and noted that they were "[i]n addition to the mandatory and standard conditions of supervision adopted by the Court." But the district court never orally adopted either the PSR or the standing order. The government argues that the district court discussed the discretionary conditions of supervised release when it orally recommended "the 500-hour substance abuse program, all available mental health counseling and medications." However the district court immediately continued, " . . . and vocational and academic opportunities, particularly the CDL opportunity if the prison where you go has that." This discussion was turned to treatment that Griffin could receive while in prison, not the conditions of his supervised release.

The question remains if asking whether the defendant reviewed the PSR, which contains conditions of supervised release, with counsel is sufficient notice such that he had an opportunity to object. "That opportunity exists when the court notifies the defendant at sentencing that conditions are being imposed."[13] Here, that opportunity did not exist, as the district court never stated that the PSR was in fact being adopted. We review

---

[11] *United States v. Jackson*, No. 20-50922, 2022 WL 738668, at *2 (5th Cir. Mar. 11, 2022).

[12] *United States v. Martinez*, 15 F.4th 1179, 1181 (5th Cir. 2021).

[13] *Diggles*, 957 F.3d at 560.

No. 21-50294

the imposition of these conditions for abuse of discretion; there is an abuse of discretion when the court makes an error of law.[14]

"If the district court fails to mention at sentencing a condition of supervised release that must be pronounced, its inclusion in the written judgment can create a conflict."[15] Such a conflict is legal error and thus an abuse of discretion. As the oral pronouncement controls, the written judgments must be amended to conform to the oral pronouncement.[16] We affirmed this yet again in *United States v. Martinez*, where en banc was sought and denied.[17] Here, the conditions of Griffin's supervised release were not orally pronounced at sentencing. Although they are included in the PSR, the PSR was never orally adopted. As this panel knows, we are bound by our Court's prior decisions, notably, *United States v. Fields*, and these unpronounced conditions must be excised from the judgment.[18] We note that

---

[14] *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015).

[15] *Jackson*, 2022 WL 738668, at *2.

[16] *Id.*; *Diggles*, 957 F.3d at 557.

[17] No. 20-10307, 2022 WL 3692677, at *1–2 (5th Cir. Aug. 26, 2022).

[18] 977 F.3d 358, 366–67 (5th Cir. 2020); *see also United States v. Rivas-Estrada*, 906 F.3d 346, 348 (5th Cir. 2018) ("When a defendant had no opportunity to object to special conditions (because they were unmentioned at sentencing), we review for abuse of discretion, and any 'unpronounced' special conditions must, upon remand, be stricken from the written judgment."); *Jackson*, 2022 WL 738668, at *4 ("[U]npronounced, unincorporated, and un-referenced conditions found only in Jackson's written judgment, although critical to effectuating the purposes of supervised release, are required to be excised according to our existing precedent.")

No. 21-50294

on remand, "in certain circumstances the district court may later modify and enlarge the conditions of supervised release."[19]

## III.

Griffin also brings two claims that are foreclosed by this Court's precedent. First, Griffin argues that his prior Texas convictions for aggravated robbery do not qualify as crimes of violence under guidelines § 2K2.1 and § 4B1.2. Griffin concedes that this issue is foreclosed by this Court's precedent but preserves this claim for further review.[20]

Second, Griffin argues that his § 922(g)(1) conviction must be reversed because that statute unconstitutionally extends federal control to firearm possession that does not substantially affect interstate commerce. Griffin concedes that this argument is foreclosed by *United States v. De Leon*,[21] but preserves this claim for further review.

---

[19] *United States v. Chavez*, No. 20-50550, 2022 WL 767033, at *5 (5th Cir. Mar. 14, 2022) (citing 18 U.S.C. § 3583(e); Fed. R. Crim. P. 32.1(c)).

[20] Griffin had argued that after the Supreme Court's decision in *United States v. Borden*, convictions for robbery and aggravated robbery should not qualify as a crime of violence under § 4B1.2, as they can be committed recklessly. 141 S. Ct. 1817, 1821–25 (2021). In *United States v. Adair*, we held that Texas robbery, even if committed with a reckless mens rea, qualifies as a § 4B1.2 crime of violence because it fits within the enumerated, generic offense of robbery. 16 F.4th 469, 471 (5th Cir. 2021). And in *United States v. Nava*, we held that *Borden* did not overturn *United States v. Santiesteban-Hernandez*, 469 F.3d 376 (5th Cir. 2006), *abrogated on other grounds by United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013) (en banc), because generic robbery does not require the use of force against another, so the § 2K2.1 enhancement still applies. No. 21-50165, 2021 WL 5095976, at *1 (5th Cir. Nov. 2, 2021), *cert. denied*, 142 S. Ct. 1241 (2022).

[21] 170 F.3d 494, 499 (5th Cir. 1999).

No. 21-50294

* * * *

We VACATE in part Griffin's sentence and REMAND to enable the district court to amend its written judgment.

No. 21-50294

ANDREW S. OLDHAM, *Circuit Judge*, dissenting.

This case involves a question that our *en banc* court left unresolved two years ago: What do we do when the written judgment in a criminal case conflicts with the district court's oral pronouncement during a sentencing hearing? *See United States v. Diggles*, 957 F.3d 551, 563 n.11 (5th Cir. 2020) (en banc) ("Given our holding that there is no pronouncement error, this case does not afford us an opportunity to reconsider that rule."). This question has far-reaching implications because our docket teems with cases where the sentencing judge says one thing and writes down something slightly different.

For reasons I cannot understand, our post-*Diggles* precedents generally prioritize spoken words over written ones. Today's case is just the latest example. The majority directs a victory for the defendant and orders the unpronounced supervised-release conditions stricken from his judgment. That conflicts with the rule—applicable in all, or virtually all, other legal contexts—that the *written judgment* governs the parties' rights and obligations. And it bizarrely pairs a substantive remedy (a directed victory for the defendant) with a procedural violation (failure to say something correctly at sentencing).

I respectfully dissent.

## I.

Deshawn Dawayne Griffin pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Presentence Report ("PSR") stated various special conditions and expressly incorporated "the mandatory and standard conditions of supervision" in its district's standing order. Before the sentencing hearing, Griffin made no objections to the supervised-release conditions in the PSR. At the sentencing hearing, the district court confirmed that Griffin reviewed the PSR with his counsel and

asked whether Griffin had any objections to the PSR. Again, Griffin had no objections to the supervised-release conditions. Although the district court discussed supervised release, it did not clearly announce that it was adopting the PSR's conditions. Those conditions appeared in the later-entered written judgment.

Griffin timely appealed, arguing that we must order the district court to conform the written judgment to the oral announcement of the sentence— *i.e.*, reduce the severity of Griffin's supervised-release sentence by removing the unpronounced conditions.

I respectfully disagree. Part II describes the irreconcilable tension in our precedent regarding the nature of the right to be present at sentencing and the appropriate remedy for violations of that right. Part III explains that our court's chosen remedy—a directed victory for the defendant—is nonsensical. Part IV argues that a limited remand is a far superior alternative remedy. Finally, Part V addresses the panel majority's decision, which exacerbates our jurisprudential mess.

## II.

We sometimes describe the right to be present at sentencing as procedural; sometimes substantive. I (A) explain this dichotomous understanding of the presence right and (B) describe the various remedies we sometimes attach to violations of it.

## A.

Our *en banc* decision in *Diggles* exemplifies our contradictory descriptions of the right to be present. There, we described the right in both procedural and substantive terms. For example, we used procedural lingo like this: "The pronouncement requirement is . . . part of the defendant's right to be present at sentencing, which in turn is based on the right to mount a

defense. It is thus satisfied when a district judge enables that defense by giving the defendant notice of the sentence and an opportunity to object." 957 F.3d at 560 (emphases added). In other places, however, we used substantive language by characterizing the right as one to have the written judgment match the oral announcement: "If the in-court pronouncement differs from the judgment that later issues, what the judge said at sentencing controls." *Id.* at 557; *see also id.* at 563 n.11 (making clear that statements in the opinion involved only the right as opposed to the remedy "[g]iven [its] holding that there is no pronouncement error"). And we've suggested that a defendant's right to be present at sentencing somehow also triggers a substantive right against resentencing (a quasi-Double-Jeopardy right): "Our caselaw does not generally give the district court that second chance when it fails to pronounce a condition, even though conditions have salutary effects for defendants, victims, and the public." *Id.* at 563.

This tension in *Diggles*—between procedural and substantive characterizations of the presence right—existed in our precedent before the decision and has led to further confusion and disagreement since it. For example, we've continuously regurgitated the substantive characterization from *Diggles* without any justification. *See, e.g.*, *United States v. Tanner*, 984 F.3d 454, 456 (5th Cir. 2021) ("Accordingly, where the oral pronouncement and written judgment conflict, the oral pronouncement controls."); *United States v. Castaneda*, No. 20-40290, 2021 WL 5397601, at *1 (5th Cir. Nov. 17, 2021) (per curiam); *United States v. Garza-Gonzalez*, No. 20-40115, 2021 WL 4889805, at *1 (5th Cir. Oct. 19, 2021) (per curiam); *United States v. McDougal*, No. 20-61073, 2021 WL 3553767, at *4 (5th Cir. Aug. 11, 2021).[1]

---

[1] And it's led to reductions to sentences outside the supervised-release-conditions context. *See, e.g.*, *United States v. Cook*, 308 F. App'x 792, 794 (5th Cir. 2009) (per curiam) ("At sentencing, the district court orally pronounced a sentence of 51 months of

No. 21-50294

## B.

The fundamental tension on the nature of the right has led to another tension on the proper remedy for violations of that right. Our cases currently recognize three different remedies: (1) remand with instructions for the district court to conform the written judgment ("directed-victory remand"); (2) remand for complete resentencing ("full remand"); and (3) remand for limited resentencing ("limited remand"). The first is substantive, while the second and third are procedural. The first option (directed-victory remand) is substantive relief because conformance reduces the severity of the sentence in the written judgment rather than gives the defendant the

---

imprisonment. The written judgment provides for a sentence of 63 months of imprisonment. . . . Because the written judgment in this case conflicts with the oral pronouncement of judgment, the oral pronouncement controls. Therefore, we remand the case for the district court to amend its written judgment to conform to its oral sentence." (quotation omitted)); *United States v. Sandoval*, 421 F. App'x 467, 468 (5th Cir. 2011) (per curiam) (oral pronouncement said "run concurrently with any [sentence] imposed by the state court based on the same conduct as that involved in the instant case" and that the "sentence would be followed by a five-year term of supervised release"; written judgment said "concurrently" and "a life term of supervised release"); *United States v. Wicker*, 791 F. App'x 444, 445 (5th Cir. 2019) (per curiam) (oral pronouncement said it would but the written judgment "eliminat[ed] [the defendant's] ability to have his federal sentence run concurrently with any state sentence stemming from the same underlying conduct as the federal offense"); *United States v. Garcia*, 322 F.3d 842, 846–47 & n.5 (5th Cir. 2003) (oral pronouncement was "three years of supervised release"; written judgment was for "five years of supervised release"); *United States v. Moore*, 224 F. App'x 383, 383–84 (5th Cir. 2007) (per curiam) (oral pronouncement was three years of supervised release; written judgment was for five years of supervised release); *United States v. Shaw*, 920 F.2d 1225, 1231 (5th Cir. 1991) (orally pronouncement is 71 months of imprisonment; written judgment is 72 months of imprisonment); *Schurmann v. United States,* 658 F.2d 389, 389–91 (5th Cir. 1981) (not specifying if sentence was consecutive or concurrent in oral pronouncement but stating consecutive in written judgment); *United States v. Gonzalez-Rivas*, 486 F. App'x 506, 506–07 (5th Cir. 2012) (per curiam) (oral pronouncement said no fine if removed from country; written judgment stated that the defendant had to pay a fine regardless of removal); *United States v. Salas*, No. 21-11066 (5th Cir. Aug. 30, 2022); *United States v. Reyna*, No. 22-10375 (5th Cir. July 21, 2022).

opportunity to be present at sentencing and object to the conditions. The second option (full remand) and third option (limited remand) are procedural relief because those options give the defendant another chance to be present at sentencing.

Our precedent regularly orders substantive relief—namely, the directed-victory remand—based solely on the *substantive* characterization of the right. *See, e.g.*, *United States v. Hungerford*, No. 21-50278, 2022 WL 118961, at *1 (5th Cir. Jan. 12, 2022) (per curiam) (observing "[l]egion precedent" striking unpronounced conditions). I've seen no other justification for the directed-victory remand other than reliance on these substantive characterizations.

## III.

There are numerous problems with the substantive characterization of the right to be present at sentencing and the substantive remedy of directing a victory for the defendant. I first (A) explain why the substantive characterization and the directed-victory remand conflict with historical practice under the common law. I next (B) explain why it contravenes the structure of our federal legal system. I then (C) explain why the directed-victory remand makes our precedent and the Federal Rules of Criminal Procedure internally inconsistent. I last (D) highlight the circuit split on these issues.

## A.

History establishes two key propositions. First, a defendant generally has the right to be present at an oral pronouncement of his sentence, and that right is procedural. Second, the actual sentence is the one imposed by a written judgment.

No. 21-50294

Start with the right. A fundamental tenet of English law was that, for felonies, the defendant had a right to be present at sentencing. *See, e.g.*, *Rex v. Harris*, 90 Eng. Rep. 1119, 1119–20 (K.B. 1702) ("we cannot give any such judgment (in the absence of the party)" and "I never knew of a judgment for a corporal punishment, unless the party were present"); *Duke's Case*, 90 Eng. Rep. 1120, 1120 (K.B. 1702) ("Judgment cannot be given against any man in his absence for a corporal punishment; there is no such precedent.").[2] This right, however, did not prevent resentencing to correct imperfect oral announcements of sentences. *See, e.g.*, *Rex v. Fletcher*, 168 Eng. Rep. 682, 683 (Crown. 1803) ("All the judges agreed that the omission in the passing of the sentence might have been remedied by the judge going again into court, after adjournment, from the lodgings, and ordering the prisoner to be again brought up, and then passing the proper judgment; *as the sentence may be corrected or altered at any time during the assizes*." (emphasis added)). Early American law maintained this common-law right. *See, e.g.*, *Ball v. United States*, 140 U.S. 118, 129 (1891) ("At common law no judgment for corporal punishment could be pronounced against a man in his absence.").[3] And the

---

[2] *See also* 2 SIR MATTHEW HALE, THE HISTORY OF THE PLEAS OF THE CROWN 401 (1736) (The "defendant must be called to say what he can, why judgment should not be given against him, and thereupon judgment may be given."); 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 375 (1753); JOSEPH CHITTY, A PRACTICAL TREATISE ON THE CRIMINAL LAW *693 (5th ed. 1847) [hereinafter CHITTY] ("WHEN any corporal punishment is to be inflicted on the defendant, it is absolutely necessary that he should be personally before the court at the time of pronouncing the sentence.").

[3] *See also Schwab v. Berggren*, 143 U.S. 442, 448 (1892) ("The personal presence of the accused from the beginning to the end of a trial for felony, involving life or liberty, as well as at the time final judgment is rendered against him, may be, and must be assumed to be, vital to the proper conduct of his defense, and cannot be dispensed with."); CHITTY at *752 ("So if it does not appear that the defendant was in court at the time sentence of death was passed, the judgment will be considered as unduly given."); *id.* at *721 ("But it

13

Founders protected it in the Fifth Amendment's Due Process Clause. *See, e.g.*, *Diggles*, 957 F.3d at 557 ("[T]he right to be present at proceedings that lack testimony (usually true of sentencings) comes from the Fifth Amendment's Due Process Clause." (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam))).[4]

Next, the practice of a written judgment. In England, the defendant's sentence after oral announcement was entered in the record along with the fact that the defendant was present for the oral announcement. *See* CHITTY at *720 ("When the judgment is pronounced, it ought, with all the preceding matter, to be entered on the record."). The sentencing judge could, under certain circumstances, amend the sentence after oral pronouncement—even after the judge entered the written judgment. In *King v. Price*, 102 Eng. Rep. 1310 (K.B. 1805), for example, the court originally sentenced the defendant to one month in prison. It later determined that the sentence was improper, so it recalled the prisoner, vacated the original sentence, and imposed a newer and harsher one (six months in prison and a 20-pound fine). *Id.* at 1310–13; *see also* CHITTY at *753 ("[T]he court may alter their own judgment, any time in the same term in which it is passed, and either pass another, or remedy a defect in the former." (quotation omitted)).[5] The same was true at

---

must appear that the defendant was in court at the time of pronouncing the judgment, or the whole will be erroneous." (quotation omitted)).

[4] *See also United States v. Denson*, 963 F.3d 1080, 1087–88 (11th Cir. 2020) ("Although this Court has not defined the precise overlap of Rule 43 and the Due Process Clause, we have concluded that the right to be present under Rule 43 is at least as broad as the right under the Due Process Clause. Thus, where Rule 43 does not require a defendant's presence, there is no due process concern." (quotation omitted)).

[5] *See also* CHITTY at *753–54 ("[T]he court may alter their own judgment, any time in the same term in which it is passed, and either pass another, or remedy a defect in the former. And the justices at sessions may amend their judgment during the same sessions, because in consideration of law, their sitting is but one day, but not at any subsequent period, unless they professedly adjourn. But no amendment can be made by any

common law in the United States. *See, e.g.*, *Ex parte Lange*, 85 U.S. 163, 167 (1873) ("The general power of the court over its own judgments, orders, and decrees, in both civil and criminal cases, during the existence of the term at which they are first made, is undeniable."); *Commonwealth v. Henry Weymouth*, 84 Mass. 144, 145 (1861) ("It seems to have been recognized as one of the earliest doctrines of the common law, that the record of a court may be changed or amended at any time during the same term of the court in which a judgment is rendered."); *Cole v. State*, 10 Ark. 318, 325 (1850) ("If, however the verdict was delivered in the presence of the defendant, and the irregularity consists simply in pronouncing sentence in his absence, the consequence would not necessarily be the awarding of a new trial, but only a reversal of the judgment and a remanding of the cause with instructions to proceed to pronounce judgment in accordance with the verdict after having inquired of the defendant whether he had anything further to say why the judgment of the Court should not be then pronounced.").

Against this backdrop, the Supreme Court promulgated the Federal Rules of Criminal Procedure. Rule 43 provides the defendant's right to "be present at . . . sentencing," subject to certain exceptions. FED. R. CRIM. P. 43(a)(3), (b). And Rule 32 requires the district court to enter a written "judgment of conviction" that imposes the "sentence." FED. R. CRIM. P. 32(k)(1) ("In the *judgment of conviction*, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and *the sentence*. If the

---

authority, when once the term or the session is over, and the judgment solemnly entered on the record. Mere ministerial acts may, indeed, at any time be amended. And any matter not of record may be amended by the record, if a mistake has arisen in the former[.]" (quotation omitted)); *id.* at *722 ("In cases of misdemeanors, it is clear the court may vacate the judgment passed, before it becomes matter of record, and may mitigate, or pass another, even when the latter is more severe. And the justices at sessions have the same power during the sessions . . . unless adjournment be entered on the role.").

defendant is found not guilty or is otherwise entitled to be discharged, the court must so order. The judge must sign the judgment, and the clerk must enter it." (emphases added)). And the Rules, like the common law, provide circumstances in which the written judgment can be amended. *See, e.g.*, FED. R. CRIM. P. 35 (correcting or reducing a sentence in a written judgment); FED. R. CRIM. P. 36 (correcting a clerical error in a written judgment).

Other federal rules also reflect the distinction between the oral announcement of a sentence and the written judgment. Take Federal Rule of Appellate Procedure 4(b)(2). It specifies that when a defendant files a notice of appeal "after the court announces . . . sentence . . . but before the entry of the judgment or order," the notice "is treated as filed on the date of and after the entry." FED. R. APP. P. 4(b)(2). Thus, the premise of Rule 4(b)(2) is that the oral announcement of a sentence critically differs from the entering of the written judgment. *See Manrique v. United States*, 137 S. Ct. 1266, 1273 (2017) (emphasizing the distinction).

In sum, history establishes two things. First, the defendant's right to be present at sentencing is procedural. After all, today, the right is protected by the Federal Rules of Criminal *Procedure* and the Due *Process* Clause. Second, the law has long recognized two distinct parts of a criminal sentence: (1) the *oral pronouncement* of the sentence in the defendant's presence and (2) the *written judgment* that imposes that sentence. The written judgment is the alpha.

The directed-victory remand conflicts with both propositions that history establishes. First, the directed-victory remand hinges on the substantive characterization of the right. Otherwise, the remand would lead to the nonsensical result of not vindicating the right that's violated. Directing victory does not give the defendant the opportunity to be present at sentencing and object to the conditions (procedural); instead, it reduces the

severity of the sentence in the written judgment (substantive). And that doesn't properly vindicate the right. We wouldn't order a not-guilty verdict for a procedural mistake at trial; we'd order a new trial. We wouldn't order a defendant released if the court made a math mistake in its Guidelines calculation; we'd order a new sentencing hearing.

So too here. We shouldn't reduce the severity of a sentence for a procedural error; we should give the opportunity to resentence in accordance with the procedural right. I can imagine no reason to treat violations of the presence right as violations of substantive due process. And as should go without saying, there is no reason to think that the quasi-Double Jeopardy view of the presence right is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quotation omitted); *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022).

Moreover, the directed-victory remand treats the written judgment as the omega. In so doing, we undermine the district court's power to control its own sentence and its own written judgment. This starkly conflicts with historical practice.

## B.

The distinction between oral pronouncements and written judgments fits with fundamental aspects of our federal legal system. Article III gives a federal court the "judicial Power" to decide "Cases" and "Controversies" brought by proper parties who are entitled to invoke our jurisdiction. U.S. Const. art. III, § 2. Federal courts exercise the judicial power and decide a case or controversy by entering a final and enforceable judgment, subject to revision only by a superior federal court. *See, e.g.*, *Hayburn's Case*, 2 U.S. (2 Dall.) 408 (1792); *United States v. Ferreira*, 54 U.S. (13 How.) 40 (1851).

17

No. 21-50294

That's why it's the judgment—not an oral pronouncement of a particular determination—that has a binding effect that settles the dispute before the court. *See, e.g.*, *Texas v. Biden*, 20 F.4th 928, 951 (5th Cir. 2021) ("A judgment, *not the opinion announcing that judgment*, has a binding effect that settles the dispute before the court." (emphasis added)).[6]

In our legal system, we treat written judgments differently than oral pronouncements of initial determinations. As an appellate court, when a defendant challenges his sentence, we review the district court's *judgment* and ultimately affirm, reverse, modify, or vacate that *judgment*. *See Jennings v. Stephens*, 574 U.S. 271, 277 (2015); *Acadian Diagnostic Lab'ys, LLC v. Quality Toxicology, LLC*, 965 F.3d 404, 414 (5th Cir. 2020). We also say that initial decisions are merged into the judgment and that the record at the time of the initial decision is superseded when we get to the judgment. *See, e.g.*, *Meadaa v. K.A.P. Enterprises, LLC*, 756 F.3d 875, 879 (5th Cir. 2014) ("[A]ll interlocutory orders of the district court leading up to the judgment merge into the final judgment . . . ." (quotation omitted)); *Banister v. Davis*, 140 S. Ct. 1698, 1708 (2020) (explaining in the habeas context that a Rule 59(e) "motion's disposition then merges into the final judgment that the prisoner

---

[6] *See also, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) ("[A] judgment conclusively resolves the case because a 'judicial Power' is one to render dispositive judgments." (quotation omitted)); *Jennings v. Stephens*, 574 U.S. 271, 277 (2015) ("Courts reduce their opinions and verdicts to [written] judgments precisely to define the rights and liabilities of the parties."); *Acadian Diagnostic Lab'ys, LLC v. Quality Toxicology, LLC*, 965 F.3d 404, 414 (5th Cir. 2020) ("[T]he judicial power vested by Article III is the power to render dispositive judgments." (quotation omitted)); *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202–03 (1830) ("The judgment of a court of record whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. It puts an end to inquiry concerning the fact, by deciding it."); William Baude, *The Judgment Power*, 96 Geo. L.J. 1807, 1844 (2008) (describing the "historical answer" to this question: "*Judgments* become binding law, not *opinions*. Opinions merely explain the grounds for judgments, helping other people to plan and order their affairs.").

No. 21-50294

may take to the next level").[7] And preclusion doctrines hinge on judgments—not on oral pronouncements. *See Langley v. Prince*, 926 F.3d 145, 163–67 (5th Cir. 2019) (en banc).

Thus, at the end of the day, it's the judgment that really matters. And any "rule that contravenes this structure . . . is peculiar," to say the least. *Jennings*, 574 U.S. at 277.

The directed-victory remand, however, contravenes fundamental tenets of our legal system along with centuries of precedent in our country and in England. The directed-victory remand remarkably treats the words spoken in a hearing as somehow taking precedence over words written in a *judgment*. Never mind that the judicial power vested by Article III is the power to render *judgments*. *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (emphasizing the "fundamental principle" that the "'judicial Power' is one to render dispositive judgments" (quotation omitted)).

## C.

Next, the directed-victory remand makes our precedent and the Federal Rules of Criminal Procedure internally inconsistent.

For one thing, *Diggles* itself proves that oral pronouncements do not control over written judgments. There, our *en banc* court held that written judgments control when they contain "mandatory" conditions that were unmentioned in the oral pronouncement. So in *Diggles* itself, we endorsed

---

[7] *See also* 15B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3914.28 (2d ed.) ("Upon appeal from a final judgment concluding the action, earlier summary dispositions merge in the judgment and are reviewable."); *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("The order retains its interlocutory character as simply a step along the route to final judgment. Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion." (quotation omitted)).

No. 21-50294

following the written judgment over the oral announcement in at least some circumstances.

For another, our precedent routinely holds that oral pronouncements in other areas do *not* warrant directed verdicts for defendants. For example, imagine that the district judge orally pronounces at sentencing an offense level of 38 when, in fact, the offense level is 37. Do we direct victory for the defendant and order the district judge to reduce the sentence? Of course not. *E.g.*, *United States v. del Carpio Frescas*, 932 F.3d 324 (5th Cir. 2019); *United States v. Rodriguez-Pena*, 957 F.3d 514 (5th Cir. 2020); *United States v. Kelley*, 40 F.4th 276 (5th Cir. 2022); *United States v. Sanchez-Arvizu*, 893 F.3d 312, 318 (5th Cir. 2018); *United States v. Blanton*, 684 F. App'x 397, 400 (5th Cir. 2017) (per curiam).

Moreover, under the federal rules, defendants don't have to be present when the judge corrects or reduces a sentence by amending the written judgment. *See* FED. R. CRIM. P. 43(b)(4). In these situations, the written judgment has conditions that plainly differ from the oral pronouncement. Yet we don't require the written judgment amended to conform with the oral pronouncement.

The federal rules also allow a district court to modify and enlarge the conditions of supervised release. *See* FED. R. CRIM. P. 32.1. The majority recognizes this fact. *See ante*, at 5–6. So even when we're insisting that the oral pronouncement controls over the written judgment, as we do again today, we don't really mean it. That's because the district court can just go back and reimpose the stricken conditions.

You might think all of this mitigates the effects of our directed-victory precedents. But in my view, it militates them. That's because we are subverting long-held legal propositions regarding the judicial power and the law of judgments to accomplish *nothing*.

No. 21-50294

## D.

Finally, this circuit should reconsider the directed-victory remand because there is a circuit split with at least the Second and Fourth Circuits.

Start with the Second Circuit. That circuit allows limited remands to remedy presence-right violations, including violations from unpronounced discretionary conditions included in the written judgment. *See, e.g.*, *United States v. Handakas*, 329 F.3d 115, 116 (2d Cir. 2003) (remanding "for the limited purpose of affording [the defendant] an opportunity to contest the occupational restriction. Whether after such opportunity the restriction should be reimposed will be within the District Court's discretion."); *United States v. Grebinger*, No. 20-1025-CR, 2021 WL 5142709, at *4 (2d Cir. Nov. 5, 2021) ("Because there is a discrepancy between the oral pronouncement and the judgment, we will remand for the limited purpose of allowing the district court to address the forfeiture issue.").

Next, the Fourth Circuit. That circuit allows remands for resentencing (a full remand) to remedy presence-right violations, including violations from unpronounced discretionary conditions included in the written judgment. *See, e.g.*, *United States v. Singletary*, 984 F.3d 341, 346 (4th Cir. 2021) ("[T]he remedy for this error is not . . . simply to strike the financial conditions from the written judgment. Rather, . . . it is to vacate the sentence and remand for the district court to resentence [the defendant].").

Our precedent directly conflicts with that of the Second and Fourth Circuits.

## IV.

I would follow the Second Circuit and order a limited remand. A limited remand merely gives the district court the *choice*: The court can *either* (1) amend the written judgment to conform with the oral pronouncement *or*

21

(2) hold a new sentencing hearing that conforms with the defendant's right to be present at sentencing. The Supreme Court has expressly encouraged us to use the limited remand as a remedy for procedural sentencing errors. *See Molina-Martinez v. United States*, 578 U.S. 189, 203–04 (2016). And for good reason: The limited remand is "a well-worn tool in our toolkit." *Rodriguez-Pena*, 957 F.3d at 523 (Oldham, J., concurring).

Here, its application provides at least two advantages over the other approaches.

First, limited remands will increase the accuracy of sentences. After all, they're "tools for dispelling doubt." *Id.* at 520. When a written judgment conflicts with the oral pronouncement, there's doubt as to why: The conflict could be a mistake; it could be intentional. The sentencing judge is most likely to know which. That's because "a sentencing judge is the world's leading expert on his own thought process." *Id.* at 521. "And that's the key question here: What was driving *this* judge's decision to impose *this* sentence for *this* defendant?" *Ibid.* (quotation omitted).

Second, limited remands give procedural relief that actually remedies the procedural right. When the sentencing judge receives a limited remand, she can resentence the defendant if she erred in the result by giving the defendant notice and an opportunity to object. Providing notice and opportunity is procedural relief that actually remedies the procedural right. Of course, if the judge decides to conform the written judgment to the oral sentence, this might look like substantive relief. But it's not. Such conformance reflects either that the written judgment contained an error or that the sentencing judge decided to resentence the defendant to the reduced sentence, which does not require the defendant's presence.

V.

Even when our precedent purports to understand the presence right as procedural, our remedies are *still* incoherent. I (A) briefly describe several of our recent precedential opinions in this area. I then (B) explain how the majority's decision in this case exacerbates confusion in this circuit.

A.

Let's start with our most recent *en banc* decision. In *Diggles*, we held that the defendant's right to be present at sentencing included a "pronouncement requirement." 957 F.3d at 556–57. We then tried to create a "bright-line rule" for when the sentencing judge must orally pronounce a condition before the defendant at the hearing: The sentencing judge needn't say anything for "mandatory" conditions—*i.e.*, conditions required by statute—but generally must say something for "discretionary" conditions. *Id.* at 557–59. The reason for this distinction, we said, is that objections to mandatory conditions would be "futile" but objections to discretionary conditions could be fruitful. *Id.* at 558–59.

We also tried to explain what exactly constitutes pronouncement of a discretionary condition. We concluded that the pronouncement requirement is met when the defendant had "notice of the sentence and an opportunity to object." *Id.* at 560; *see also id.* at 563 ("The thread running through each of these rulings is notice and an opportunity to object.").

In the wake of *Diggles*, we've repeatedly found no error where the district court failed to orally pronounce supervised-release conditions—so long as the defendant had notice of them. Take, for example, *United States v. Martinez*, 15 F.4th 1179 (5th Cir. 2021). There, the district court issued a "written judgment" with "17 standard conditions listed in the Western District of Texas's Order on Conditions of Probation and Supervised Release"—*i.e.*, the district's "standing order." *Id.* at 1180–81. It did so

No. 21-50294

without expressly "cit[ing] the district court's standing order when it orally imposed the 'standard conditions.'" *Ibid.* We concluded that it was "frivolous" to argue that there was a "pronouncement problem." *Ibid.* Even though the court failed to cite—let alone expressly incorporate—the standing order at the sentencing hearing, we highlighted that it (1) adopted the PSR, which "recommended the 'mandatory and standard conditions of supervision'" and (2) said that "it was imposing 'standard conditions.'" *Ibid.* This was enough to make any presence-right challenge "*frivolous*" because the District's "standing order" provided "'advance notice'" to counsel and thus "ample opportunity to object" at the sentencing hearing. *Ibid.* (emphasis added).

Or consider *United States v. Vargas*, 23 F.4th 526 (5th Cir. 2022) (per curiam). There, we extended *Martinez* and determined that there was no violation of the defendant's right to be present when the sentencing judge merely said that "supervised release will be for a period of four years under the Court's mandatory, standard, and the special conditions" and did not expressly adopt a document that recommended such conditions. *Id.* at 528 (quotation omitted). That oral reference alone, we concluded, provided the defendant with sufficient notice and an opportunity to object.

Finally, consider *United States v. Aguilar-Cerda*, 27 F.4th 1093 (5th Cir. 2022). In that case, we determined that it was *frivolous* to contend that the district court "plainly err[ed] when it referred to its previous written standing order and ordered that 'Defendant shall comply with the standard conditions contained in this judgment' without reciting those conditions during the sentencing hearing." *Id.* at 1095.

No. 21-50294

B.

Here, however, the panel refuses to follow *Diggles*, *Martinez*, *Vargas*, and *Aguilar-Cerda*. Today's decision thus further exacerbates the incoherence of our precedent in this area.

Here, as in *Diggles*, *Martinez*, *Vargas*, and *Aguilar-Cerda*, it's undisputable that Griffin had notice of the supervised-release conditions. The PSR stated all the special conditions in the written judgment and expressly invoked "the mandatory and standard conditions of supervision adopted by the Court" in its district's standing order. *Cf. Diggles*, 957 F.3d at 560 ("The PSR is the centerpiece of sentencing."). And the district court confirmed that Griffin reviewed the PSR with his counsel and asked whether Griffin had any objections to the PSR. Griffin thus had "far more opportunity to review and consider objections to those conditions than defendants who hear about them for the first time when the judge announces them." *Id.* at 560–61 (quotation omitted).

Griffin also had the opportunity to object to each condition. This is clear from the fact that Griffin made numerous written objections to other parts of the PSR before the hearing. Then at the hearing, Griffin's counsel said that all but one of those objections "ha[d] been resolved" before the hearing and argued the one remaining objection. *See* ROA.259–60 ("Our objections have been resolved except that . . . we argue that [a prior robbery conviction] is not a basis for a two-level increase in this case."); *ante*, at 2. Griffin's counsel even requested one of the special conditions at the hearing, which is why on appeal, Griffin doesn't challenge that condition. *See* Blue Br. at 26 ("At sentencing, defense counsel requested that the district court place Griffin on supervised release and require him to attend counseling for his PTSD . . . . Accordingly, *Griffin does not challenge imposition of that condition*." (emphasis added) (quotation omitted)); *see also* ROA.269–71.

On top of all that, the sentencing judge implicitly adopted the recommended conditions of the PSR. Near the end of the hearing, and after Griffin's counsel proposed a supervised-release condition, the judge explained that "under federal supervised release, *if you violate the rules*, you go back to prison for two more years." ROA.274 (emphasis added). This, at the very, least put Griffin and his counsel on notice that there were supervised-release conditions and to either ask for clarification on those conditions or object to the ones in the PSR. Soon after, the judge asked if any party had any additional objects. All said no. Taken together, Griffin had notice and an opportunity to object to the supervised-release conditions.

So why does the majority conclude that there was no pronouncement? To my colleagues, the defendant lacked notice and an opportunity to object because "the district court never orally adopted either the PSR or the standing order." *Ante*, at 4. As a matter of commonsense, this conclusion is strange. Griffin clearly had notice and opportunity to object long before the hearing. That's because the PSR put Griffin on notice to all the supervised-release conditions in the written judgment, Griffin confirmed he reviewed the PSR with counsel, Griffin submitted written objections before the hearing, and Griffin pressed one of those objections at the hearing.

But even focusing just on what was said at the hearing, I don't see how today's holding can be squared with our precedent.

Take *Martinez*: Why is saying "standard conditions" enough to make any challenge "frivolous" because the defendant had an opportunity "to ask for more specificity about the conditions," 15 F.4th at 1181, but mentioning that supervised release will be under "the rules" not enough? Or take *Vargas*: Why is saying that "supervised release will be . . . under the Court's mandatory, standard, and the special conditions" enough, 23 F.4th at 528

(quotation omitted), but saying that supervised release will be under "the rules" not?

Perhaps our court is hunting for magic words? Here, the judge used the word "rule" instead of the legalese "condition." And the judge did not qualify his supervised-release sentence with other legalese like "standard" or "mandatory" or "special." But I don't see why that matters because our *en banc* court derided the use of such labels. *See Diggles*, 957 F.3d at 557 ("But these lines are not so clear cut. . . . We can do better."). And we've repeatedly denied that there is a magic-words requirement. *See, e.g.*, *United States v. Garcia*, 983 F.3d 820, 824 (5th Cir. 2020) ("There are no magic words required to satisfy this oral pronouncement obligation." (quotation omitted)).

\* \* \*

At bottom, our precedent in this area is a mess. We have no coherent explanation for whether the right to be present at sentencing is a substantive or procedural one. We have no coherent explanation for what constitutes a violation of the presence right. And we have no coherent explanation for what remedy properly addresses a violation of the presence right. And while we're stumbling about and awarding directed victories for criminal defendants, we're undermining the judicial power to issue judgments and hundreds of years of Anglo-American legal tradition. Until our *en banc* court takes a case to correct these inconsistencies, I respectfully dissent.