# United States Court of Appeals for the Fifth Circuit

————————

No. 23-30917

————————

United States Court of Appeals
Fifth Circuit

**FILED**

October 15, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DAJUAN MARTIN,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CR-219-1

———————————————————————

Before DENNIS, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

Dajuan Martin pled guilty to one count of being a felon in possession of a firearm and was sentenced to 33 months of imprisonment. On appeal, he brings three challenges to his sentence. He concedes that one is foreclosed, while the government concedes that another is valid. The one contested challenge is whether it is proper to accept the Sentencing Guidelines' commentary defining "large capacity magazine." We conclude that it is proper to do so. Accordingly, we AFFIRM in part, VACATE in part and REMAND for further proceedings.

No. 23-30917

## FACTUAL AND PROCEDURAL BACKGROUND

Dajuan Martin was arrested after he was seen riding a scooter that had been stolen at gunpoint in New Orleans. As police pursued him, Martin took a Glock 26, 9mm semi-automatic handgun from his waistband and threw it away. The firearm was recovered. It contained a magazine in which there were 16 rounds of ammunition.

Martin pled guilty to the single count in his indictment of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The Presentence Investigation Report (PSR) calculated his total offense level at 12 with a criminal history category of III. The suggested Sentencing Guidelines range was 15 to 21 months. Four days before the sentencing hearing, the government objected to the PSR base offense level. The government argued that Sentencing Guidelines Section 2K2.1(a)(4)(B) required Martin's base level be changed to 20 because he "possessed a firearm loaded with a magazine that could accept more than fifteen (15) rounds of ammunition." In response, Martin argued that although the Guidelines require a base level of 20 for the possession of a firearm capable of accepting a "large capacity magazine," that term is not defined in the Guidelines. He argued it was error to rely on the Guidelines' commentary, which defines "large capacity magazine" as a magazine capable of holding 15 rounds.

The district court rejected Martin's argument and accepted a base offense level of 20 with a criminal history category of III. Martin was granted a three-point reduction for acceptance of responsibility. With a total offense level of 17, Martin's new Guidelines range was 30 to 37 months imprisonment.

The district court denied Martin's motion for a downward variance and sentenced him to 33 months of imprisonment followed by 3 years of supervised release. The district court orally pronounced several conditions of

his supervised release.  Two are relevant to this appeal.  First, the district court required that Martin participate in an outpatient treatment program for drug and alcohol abuse.  Second, the court required that Martin submit to searches conducted at a reasonable time, in a reasonable manner, and when reasonable suspicion exists that Martin violated a condition of the supervised release.

The district court deviated from these oral pronouncements in the written judgment.  The written judgment differed from the oral pronouncement regarding drug and alcohol abuse by permitting "inpatient" treatment facilities and by allowing the probation officer to determine whether Martin should participate in "an approved treatment program for substance abuse" after a positive urinalysis test.  The written judgment differed from the search condition by requiring Martin to "consent to a warrantless search or seizure" of "the defendant's person and premises, including any vehicle."  The written judgment also lacked the oral requirement that the search be "conducted at a reasonable time in a reasonable manner."

## DISCUSSION

### I.　*Guidelines commentary defining "large capacity magazine"*

Martin argues that the district court erred in applying the Guidelines enhancement for possessing a firearm with a large capacity magazine. We first quote the relevant Guideline:

(a)  Base Offense Level (Apply the Greatest):

　. . .

(4) 20, if –

　. . .

(B) the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine[.]

U.S.S.G. § 2K2.1(a)(4)(B).

The Guidelines do not define "large capacity," but the commentary does:

> For purposes of subsections (a)(1), (a)(3), and (a)(4), a "semiautomatic firearm that is capable of accepting a large capacity magazine" means a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

U.S.S.G. § 2K2.1 cmt. 2.

Central to Martin's argument are two Supreme Court cases explaining forms of deference to interpretations of statutes. The more on-point precedent specifically concerns the Sentencing Guidelines. *See Stinson v. United States*, 508 U.S. 36 (1993). There, the Court held that Guidelines commentary is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 38. Martin insists a later precedent applies because the requirements for *Stinson* deference are not met. That later precedent states that before an agency's interpretation of its own regulation is entitled to deference, the court must "exhaust all the 'traditional tools' of construction" and find the regulation "genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019). Martin acknowledges that this court has already held that *Stinson* remains good law despite *Kisor. See United States v. Vargas*, 74 F.4th 673, 683 (5th Cir. 2023) (en banc). He asserts, though, that the conditions for *Stinson* are not met. We now discuss that assertion.

In *Stinson*, the Supreme Court held "that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a

plainly erroneous reading of, that guideline." 508 U.S. at 38. Commentary is binding and controlling on courts when it meets those conditions. *Vargas*, 74 F.4th at 680 (quotation marks omitted). Commentary is inconsistent with the Guidelines if "following one will result in violating the dictates of the other." *Stinson*, 508 U.S. at 43. To be inconsistent, "there must be some irreconcilable variance ('flat inconsistency') between the two." *Vargas*, 74 F.4th at 684 (citation omitted).

No precedent of this court has considered the authoritativeness under *Stinson* of the commentary's definition of "large capacity magazine" as one capable of accepting more than 15 rounds. Martin insists that "large" denotes an atypical size, and magazines that hold more than 15 rounds of ammunition are not atypical. The Ninth Circuit considered this precise argument and observed that "[s]omething can be both popular and large," and "the popularity of that firearm does not mean that a magazine that can accept more than fifteen rounds is not also a 'large capacity magazine.'" *United States v. Trumbull*, 114 F.4th 1114, 1119 (9th Cir. 2024). In other words, if something can come in small, medium, large, and even extra-large sizes, nothing about those options indicates what is the usual size. Small and medium sizes may rarely be utilized, but that fact does not transform the large size into nonlarge.

We find that adhering to the commentary does not cause one to "violat[e] the dictates" of the Guidelines' prohibition against large capacity magazines. *See Stinson*, 508 U.S. at 43. There is no "flat inconsistency" between "large capacity magazine" and "more than 15 rounds of ammunition." *See Vargas*, 74 F.4th at 684. We conclude that the commentary's definition of "large capacity magazine" is authoritative under *Stinson*, and thus we must follow the commentary. Under the Guidelines and its commentary, Martin's base offense level of 20 was appropriate.

Martin also argues that it would violate the constitutional separation of powers to apply the commentary's definition of "large capacity magazine" because that definition broadens the scope of Section 2K2.1. According to Martin, developing a definition of "large capacity" should have gone through the process for amending the Guidelines, allowing input from a variety of interested parties and ultimately being submitted to Congress. We do not interpret this definition as one that requires an amendment to the Guidelines. The Supreme Court explained the kind of authority entrusted to the Commission for issuing commentary:

> The Commission, after all, drafts the guidelines as well as the commentary interpreting them, so we can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute.

*Stinson*, 508 U.S. at 45. The Commission's defining "large capacity" in this manner was consistent with the purposes of the commentary.

## II. *Conflicts between pronounced conditions and written judgment*

We next consider Martin's challenges to the two supervised-release conditions in the written judgment that differed from the oral pronouncement. We review for abuse of discretion because Martin "had no opportunity to object to or comment on the special condition[s]" within the written order. *United States v. Mireles*, 471 F.3d 551, 557 (5th Cir. 2006).

Discretionary conditions must be orally pronounced. *United States v. Diggles*, 957 F.3d 551, 557, 559 (5th Cir. 2020) (en banc). If "there is an actual conflict between the district court's oral pronouncement of [the] sentence and the written judgment, the oral pronouncement controls." *Mireles*, 471 F.3d at 557. "If the written judgment broadens the restrictions or

6

requirements of supervised release from an oral pronouncement, a conflict exists," and "the appropriate remedy is remand to the district court to amend the written judgment to conform to the oral sentence." *Id.* at 558.

We first examine the condition related to drug and alcohol abuse. At the sentencing, the district judge orally pronounced the condition:

> The defendant shall participate in an approved outpatient treatment program for drug and/or alcohol abuse and abide by all supplemental conditions of treatment. The defendant shall contribute to the cost of this program to the extent that he is deemed capable by the United States probation officer. While under supervision, the defendant shall submit to random urinalysis testing.

The written judgment added the possibility of inpatient treatment:

> 1. The defendant shall participate in an approved treatment program for drug and/or alcohol abuse and abide by all supplemental conditions of treatment, which may include urinalysis testing. Participation may include inpatient/outpatient treatment. The defendant shall contribute to the cost of this program to the extent that the defendant is deemed capable by the United States Probation Officer. While under supervision, the defendant shall submit to random urinalysis testing, as directed by the United States Probation Officer.

> 2. The defendant shall undergo random urinalyses, as directed by the U.S. Probation Officer. If the defendant tests positive for the use of illegal narcotics, he/she may, as determined by the probation officer, participate in an approved treatment program for substance abuse and abide by all supplemental conditions of treatment, unless directed otherwise by the Court. Participation may include inpatient/outpatient treatment. The defendant shall contribute to the cost of this program to the extent that the defendant is deemed capable by the U.S. Probation Officer.

No. 23-30917

We conclude that "the written judgment broadens the restrictions or requirements of supervised release from an oral pronouncement." *Mireles*, 471 F.3d at 558. The government concedes that adding inpatient treatment did broaden the conditions.[1] We remand for the district court to amend the judgment to conform this condition to the oral pronouncement. *Id.*

The second condition concerns searches to be conducted during Martin's supervised release. The oral pronouncement provided:

> The defendant shall submit his person, property, house, residence, papers, office, vehicle, or other areas under your control to a search conducted by a United States probation officer or other law enforcement officer under the direction and control of the United States probation officer. Any search must be conducted at a reasonable time in a reasonable manner. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and the areas to be searched contain evidence of the violation.

The judgment stated the following:

> The defendant shall consent to a warrantless search or seizure by a United States Probation Officer of the defendant's person and premises, including any vehicle, to determine compliance with the conditions of his supervision.

Again, we examine whether the written judgment is broader than the oral pronouncement as to supervised release. *Mireles*, 471 F.3d at 558. The

---

[1] Martin also argues that adding the probation officer's discretion to require inpatient or outpatient treatment if Martin tests positive for illegal narcotics creates another conflict. The government disputes that claim, arguing the consequence for a positive urinalysis test is contained within a mandatory supervised release condition, and thus did not need to be orally pronounced to be binding. We need not reach the issue because the district court will conform the written judgment to the oral pronouncement on remand.

written condition requires Martin to consent to a warrantless search and removes the requirements that the search be conducted at a reasonable time and in a reasonable manner. Those changes broaden the requirements of the supervised release from the requirements orally pronounced at Martin's sentencing. The government concedes this point. Again, we remand in order that the written judgment may be amended as to this condition.

### III.     *Constitutionality of statute of conviction*

The sole basis for Martin's incarceration is his violation of the federal prohibition on firearm possession for felons found in 18 U.S.C. § 922(g)(1). On appeal, he challenges, for the first time, the constitutionality of Section 922(g)(1). Martin acknowledges that his challenge was not raised before the district court and is thus unpreserved.

We review unpreserved constitutional challenges for plain error. *United States v. Spires*, 79 F.3d 464, 465 (5th Cir. 1996). Plain-error review involves four prongs: (1) "there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights"; and (4) "if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation marks and citation omitted). "Meeting all four prongs is difficult, as it should be." *Id.* (quotation marks and citation omitted). Martin's claim cannot satisfy even the first prong. He has not demonstrated error, let alone plain error. This court "consistently upheld the constitutionality of § 922(g)(1)" before the Supreme Court's decision in *New York State Rifle and Pistol Ass., Inc. v. Bruen*, 597 U.S. 1 (2022). *See United States v.*

*Jones*, 88 F.4th 571, 573 (5th Cir. 2023) (citing *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003)).  We have continued to uphold the provision post-*Bruen*.  *United States v. Diaz*, No.23-50452, 2024 WL 4223684, at *9 (5th Cir. 2024).  Accordingly, the district court did not err when it sentenced Martin for his violation of Section 922(g)(1).

The district court's sentence is AFFIRMED in part, VACATED in part and REMANDED so that the written judgment can be amended to conform with the district court's oral pronouncements at sentencing.