# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2025

Lyle W. Cayce
Clerk

No. 24-30323

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TYREE KING,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CR-154-1

Before HIGGINSON, HO, and WILSON, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:

For the first time on appeal, defendant/appellant, Tyree King, contests use of a prior armed robbery conviction in Louisiana as a "crime of violence" under the United States Sentencing Guidelines for the purpose of calculating the base level offense for his sentence. He also asks for remand to the district court for amendment of the written judgment and for clarification of statements made by the district court at his sentencing. Because we review the sentencing calculation for plain error, we AFFIRM the district court's base level offense determination. However, we REMAND to the district court to modify its written judgment to conform to the oral pronouncement

of the sentence and to clarify its statement with respect to presentence detention credit.

## I

King pleaded guilty, without a plea agreement, to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and to one count of possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). King did not object to the presentence investigation report (the "PSR"), which calculated a base offense level of 22, pursuant to U.S.S.G. § 2K2.1(a)(3), on the basis that King's prior conviction for armed robbery in Louisiana was a "crime of violence" as defined in § 4B1.2(a) of the Sentencing Guidelines.

King now argues that the district court plainly erred in holding that King's prior conviction for armed robbery is a crime of violence as defined by the Guidelines. King argues that because armed robbery under Louisiana law is a general intent crime, it does not qualify as a crime of violence. Thus, he argues his base offense level should have been 20 under § 2K2.1(a)(4), with the result that his Guidelines range would have been 46 to 57 months, rather than the range of 57 to 71 months that the district court applied in sentencing King to 71 months.

King also argues that the district court plainly erred in determining his sentence based on the court's statements at the sentencing hearing indicating that King would receive credit for the time he spent in custody prior to his sentencing.

Finally, King argues, and the government agrees, that the district court's written judgment conflicts with its oral pronouncement of two special conditions of supervised release, requiring amendment of the judgment.

## II

No. 24-30323

As he concedes, King raises his Guidelines offense level objection for the first time on appeal. Because King failed to make a contemporaneous objection to the district court's Guidelines calculation, we review for plain error.[1] *See Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). The Supreme Court has identified four requirements for reversing a district court based on plain error review: (1) "there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights"; and (4) "if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (cleaned up). "Meeting all four prongs is difficult, 'as it should be.'" *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

The focus of our inquiry here is on the second prong, whether the error was clear or obvious. To determine "whether an error is 'clear or obvious[,]' we look to the 'state of the law at the time of appeal,' and we must decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to

---

[1] The government argues that we should not review King's Guidelines argument at all because he invited the asserted error by advocating for the Guidelines range calculated in the PSR. However, as King points out, his counsel did not independently advocate for the Guidelines range adopted by the district court but rather opposed the higher offense level requested by the government and additionally sought a downward variance even from the lower range calculated in the PSR. Because we construe counsel's statements narrowly when applying the invited error doctrine, *United States v. Franklin*, 838 F.3d 564, 567 (5th Cir. 2016), we conclude that King did not invite this asserted error.

'reasonable dispute.'" *United States v. Scott*, 821 F.3d 562, 570–71 (5th Cir. 2016) (quoting *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015)).

### III

King's base offense level was calculated to be 22. Section 2K2.1(a)(3) of the Sentencing Guidelines provides for a base offense level of 22 if:

> (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.

U.S.S.G. § 2K2.1(a)(3).[2] King argues that his prior conviction for armed robbery under La. R.S. 14:64 is not a "crime of violence" for purposes of applying § 2K2.1(a)(3)(B), and so the calculation of the base offense level for his sentence is incorrect.

Section 4B1.2(a) of the Sentencing Guidelines defines "crime of violence" as an offense punishable by more than one year of imprisonment that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "force clause"); or (2) is an offense that is one of several enumerated offenses, one of which is "robbery" (the "enumerated offense clause"). To assess whether La. R.S. 14:64 "meets either of these definitions, . . . we apply the categorical approach, which looks 'only to the statutory definitions—i.e., the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions.'" *United States v. Garner*, 28 F.4th 678, 681

---

[2] King asserts the proper base offense level should have been 20, pursuant to § 2K2.1(a)(4)(B).

(5th Cir. 2022) (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)). If La. R.S. 14:64 "proscribes a broader range of conduct than that defined in the Sentencing Guidelines, the statute is not categorically a crime of violence and cannot be used as a predicate in computing an advisory sentence." *Id.*

La. R.S. 14:64 criminalizes "[a]rmed robbery," which it defines as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64(A).

The government argues that this predicate offense qualifies as a crime of violence.

The Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021), is instructive as to the force clause. In *Borden*, the Supreme Court examined § 924(e) of the Armed Career Criminal Act ("ACCA") and its definition of "violent felony," which requires the "use of physical force against the person of another".[3] The Court held that an offense that criminalizes reckless conduct is not a "violent felony" because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual," and "[r]eckless conduct is not aimed in that prescribed manner." 593 U.S. at 429.

Post-*Borden*, this court has examined the *mens rea* requirement in a number of state criminal offenses to determine whether those offenses constitute violent felonies under ACCA. With certain offenses, the analysis is straightforward because the requisite intent for committing the offense is included in the language of the statute. *See, e.g.*, *United States v. Ybarra*, No.

---

[3] ACCA case law applies to a § 4B1.2(a)(1) "crime of violence" analysis because of similar statutory language. *United States v. Moore*, 635 F.3d 774, 776 (5th Cir. 2011); *Garner*, 28 F.4th at 682.

20-10520, 2021 WL 3276471, at *1 (5th Cir. July 30, 2021) (per curiam) (holding post-*Borden* that prior convictions for Texas robbery and burglary were not violent felonies under ACCA because the relevant provision "criminalize[d] the reckless use of force").

However, not all predicates are so easily resolved. In *Garner*, we analyzed the intent required for an aggravated assault offense under La. R.S. 14:37.4 for purposes of determining whether it constitutes a crime of violence under U.S.S.G. § 4B1.2.

We noted that, although "'assault' is defined as intentional conduct in Louisiana's Criminal Code," the Code gives "intention" "a much broader meaning than . . . common usage . . . suggests." *Garner*, 28 F.4th at 683. Under the Louisiana cases, aggravated assault is a general intent crime, and we explained that, "reckless or even negligent states of mind can satisfy Louisiana's general intent standard, so long as a reasonable person would know that the criminal consequences would result from the defendant's actions." *Id* (cleaned up).

Thus, we held in *Garner* that because aggravated assault with a firearm under La. R.S. 14:37.4 can be committed with reckless intent or by mere negligence, it "is not categorically a crime of violence under U.S.S.G. § 4B1.2(a)'s force clause." *Id.* at 683–84. *Garner* also held that because the generic contemporary meaning of aggravated assault requires a purposeful, knowing, or reckless mental state, aggravated assault, as set forth in Louisiana's Criminal Code, was not a "crime of violence under the enumerated offense clause either." *Id.*

King argues that because Louisiana armed robbery is also a general intent crime, it can be committed recklessly or negligently, and therefore

No. 24-30323

armed robbery is not a crime of violence that can be used to enhance his sentence under the Guidelines.[4]

Because of the statutory language in the Louisiana Criminal Code, many Louisiana crimes are general intent crimes.[5] King is not the first to argue that *Garner* stands for the proposition that all Louisiana general intent crimes can be committed with a *mens rea* of recklessness and thus cannot constitute crimes of violence under the Guidelines. However, our court has been cautious about accepting defendants' invitations to expand *Garner* to other Louisiana crimes on plain error review.

Following *Garner*, in unpublished opinions concerning different Louisiana general intent crimes, we have held that on plain error review, the holding in *Garner* is limited to the Louisiana aggravated assault statute, La. R.S. 14.37.4. *See United States v. Porterie*, No. 22-30457, 2025 WL 457999 (5th Cir. Feb. 11, 2025); *United States v. Forbito*, No. 22-11026, 2023 WL 8274528 (5th Cir. Nov. 30, 2023). As we observed in *Porterie*, notwithstanding our conclusion in *Garner* that Louisiana's general intent

---

[4] The government disagrees, relying primarily on our holding in *United States v. James*, 950 F.3d 289 (5th Cir. 2020) and *United States v. Brown*, 437 F.3d 450, 452 (5th Cir. 2006), that Louisiana armed robbery is a crime of violence. But these cases, which were decided before *Borden* and *Garner*, do not engage in the analysis of the *mens rea* required by *Borden*. Instead, *James* and *Brown* hold that because the Louisiana Criminal Code defines "crime of violence" to include not only armed robbery, but also simple robbery, these are violent felonies under the ACCA. La. R.S. § 14:2(B); *James*, 950 F.3d at 291-92. *Brown*, 437 F.3d at 452. However, La. R.S. § 14:2(B)(7) also defines aggravated assault as a "crime of violence," and in *Garner*, we held that it was not. And so the Louisiana statutory definition is not the sole basis for making a "crime of violence" determination.

[5] *See State v. Clarke*, 345 So. 3d 1015, 1018 (La. 2022) (noting that several serious crimes in Louisiana, including first degree rape and armed robbery, are general intent crimes and highlighting that "it is not the potential for harm from the criminal conduct or the potential penalty the offender faces that define the requisite intent but rather the statutory language").

scheme permits a conviction with a *mens rea* of recklessness, we pay close attention to whether there is also a Louisiana state court case demonstrating that a conviction has been upheld for the particular Louisiana offense based on a *mens rea* of recklessness or negligence. *Porterie*, 2025 WL 457999, at *4.

King primarily cites *State v. Smith*, 23 So. 3d 291 (La. 2009), for the proposition that Louisiana armed robbery can be committed recklessly or negligently. In *Smith*, the Louisiana Supreme Court examined the conviction, for armed robbery, of a woman who drove a car through a Walmart parking lot, with her boyfriend as a passenger, while the two were looking for an opportunity to snatch someone's purse, which the boyfriend eventually did. Smith, 23 So. 3d at 292-95. The Louisiana Supreme Court engaged in a lengthy discussion of Louisiana's general intent concept, and why the boyfriend's decision to arm himself could lead to Smith's conviction for armed robbery regardless of whether or not she knew he was armed. *Id*, at 295-98. *Smith* could arguably be read to lend support to King's argument. However, the Louisiana Supreme Court's decision in *Smith* does not specify whether Smith had reckless or negligent intent. Because *Smith* never confirms that armed robbery can be committed recklessly or negligently, we do not deem it a basis for us to find clear or obvious error by the district court.

IV

King raises two other issues on appeal that require us to remand for re-sentencing.

A

King argues that his sentence is erroneous for failing to give him credit for presentence time served. As King concedes, review of this claim is also for plain error because he did not object when the district court pronounced his sentence. He contends that the Federal Bureau of Prisons ("BOP") will not credit him for the time he spent in federal detention pursuant to a writ of

habeas corpus ad prosequendum.[6] He asserts that the district court should have adjusted his sentence downward under U.S.S.G. § 5G1.3(b)(1) to effectuate its stated intent to give him credit towards his federal sentence for presentence time served.

The Government argues that the district court's single statement that his sentence included credit for time served does not demonstrate a clear or obvious error, as King has not "definitively shown" that the district court intended to reduce his sentence.

When imposing King's sentence, the district court imposed an aggregate 71-month sentence "with credit for time that [King] already served awaiting this sentence," and it recommended that the sentence would run concurrent to King's parole revocation sentences in two state criminal cases. At the conclusion of the sentencing hearing, the district court explained that it did not want King "to spend any more time in jail other than what [it] just gave" him. The written judgment states only that the sentence is to run concurrent with the two state parole revocation sentences. It does not mention any credit for time King spent in custody prior to being sentenced in this case.[7]

King notes that during the sentencing hearing, the district court expressed confusion regarding [King's] custody and parole status. In this regard, the district court recognized that King was arrested on a parole

_____

[6] After the filing of the briefs, we granted King's unopposed motion to supplement the record with a BOP sentence computation data sheet for King, which confirms that he is not receiving credit toward his federal sentence for any days that he spent in custody prior to sentencing.

[7] Because the oral pronouncement and written judgment conflict, the oral pronouncement controls. *United States v. Mireles*, 471 F.3d 551, 557–58 (5th Cir. 2006); *see also United States v. Jones*, 811 F. App'x 872, 875 n.1 (5th Cir. 2020).

revocation warrant related to two state court offenses. The district court observed that, if there were outstanding state parole violation warrants, the state court could determine whether to run any new state sentence concurrently or consecutively with the federal sentence being imposed.

At the time of the sentencing hearing, there were multiple factual uncertainties that complicates the analysis of the third prong of the plain error test, whether this asserted error affected King's substantial rights. Indeed, the record was not clear (1) whether the state court actually imposed a revocation sentence, (2) if so, whether that sentence had been discharged at the time of sentencing in this case, or (3) whether the BOP was already crediting King with the credit he now requests. King now contends that the record demonstrates that he was in primary state custody being credited against a state parole revocation sentence with "a 'release date' years in the future," implying that the PSR shows that his parole was revoked and a revocation sentence was imposed and is still running. However, the PSR does not clarify whether a state revocation sentence was imposed or whether the "[f]ull-term release date" refers to a release date for a revocation sentence or the end of King's term of parole. Moreover, in the district court, King's attorney indicated that he did not believe that his probation had been revoked, and the district court seemed to construe the release date as the date on which King's parole supervision expired. Although we now know that King is not receiving credit toward his federal sentence for any days that he spent in custody prior to sentencing, the uncertainties may have affected whether King could show that his sentence would have been reduced. *See United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th Cir. 2012).

"The district court is not permitted to compute the credit for time served or to order the backdated commencement of a sentence." *United States v. Taylor*, 973 F.3d 414, 418 (5th Cir. 2020) (footnotes omitted). However, a sentencing court does "retain residual authority" to consider a

defendant's time in custody when deciding the appropriate sentence. *United States v. Hankton*, 875 F.3d 786, 792 (5th Cir. 2017). A sentencing court can reduce the defendant's sentence under various provisions of the Guidelines, including §§ 5G1.3(b) or 5K2.23. *Id.* Section 5G1.3(b) permits a court to adjust a sentence to account for an "undischarged term of imprisonment" when (1) the time previously served "resulted from another offense that is relevant conduct to the instant offense of conviction," and (2) "such period of imprisonment will not be credited to the federal sentence by the [BOP]."

Because the district court's intention regarding the treatment of the time King spent in jail prior to his federal sentencing is not clear from the record, and because we are remanding to ensure that the written judgment conforms to the oral pronouncement of the sentence, we instruct the district court to resolve whether it would have imposed the same sentence regardless of how the pre-sentence detention was credited, or whether the district court intended some other result. *See Taylor*, 973 F.3d at 415.

B

Both King and the government agree that two special conditions of supervised release in the written judgment conflict with the district court's oral pronouncement of the sentence and that we should remand for the district court to amend the written judgment to conform to the oral pronouncement.

Discretionary conditions of supervised release must be orally pronounced. *United States v. Martin*, 119 F.4th 410, 415 (5th Cir. 2024) (citing *United States v. Diggles*, 957 F.3d 551, 557, 559 (5th Cir. 2020) (en banc)). If there is an actual conflict between the written judgment and the district court's oral pronouncement, the oral pronouncement controls. *Id.* The deviation here between the written judgment and oral pronouncement presents such an actual conflict. Accordingly, we remand this case to the district court

No. 24-30323

for the purpose of modifying the written judgment to conform to the oral pronouncement.

## V

For the foregoing reasons, we AFFIRM the district court's calculation of King's base level offense but REMAND to the district court to clarify the district court's intention with respect to the time King was incarcerated prior to sentencing, as well as to modify the written judgment to conform to the oral pronouncement of the sentence.